## THE STATE v. WIGGER, Appellant.

### Division Two, May 22, 1906.

1. **CONTINUANCES: Three Times Without Trial: Filing New Information: Terms of Court Excluded.** When the prosecuting attorney dismisses an information previously filed and files a new information, in determining whether defendant is entitled to his discharge on the ground of three continuances, the terms of court which lapse under the prior information must be excluded.

2. **ACCOMPLICE: Evidence.** The evidence of an accomplice is competent against his accomplice on trial for the same offense.

3. ———: ———: **Uncorroborated.** The evidence of an accomplice, even though uncorroborated, is sufficient to sustain a conviction if believed by the jury.

4. **ARSON: Sufficiency of Evidence.** Evidence *held* sufficient to justify a conviction of arson.

5. **EVIDENCE: Impeaching Witness: Charged With Criminal Offense.** The mere fact that a witness has been charged with a criminal offense does not affect his credibility, and evidence as to such charge is inadmissible for that purpose.

6. **REMARKS OF ATTORNEY: Outside of Record: Confession of Accomplice.** While it was competent for the prosecuting attorney, in his argument to the jury, to discuss the testimony of defendant's accomplice, given before the jury in the presence of the court, it was not competent for him to state what the accomplice had told him in his office concerning defendant's guilt, since neither he nor the accomplice had testified to such statements, and defendant had had no opportunity to cross-examine either upon that question, nor to object to the competency of such statements made in the absence of defendant.

Appeal from St. Francois Circuit Court.—*Hon. Chas. A. Killian,* Judge.

REVERSED AND REMANDED.

*W. S. Anthony* and *Jasper N. Burks* for appellant.

(1)   The motion to discharge the defendant should have been sustained.   Secs. 2641, 2642, 2643, 2644, R. S. 1899; Brooks v. People, 88 Ill. 327.   (2)   It was error for the prosecuting attorney to ask witnesses for defendant if they were not charged with the crime of robbery.   It is elementary that a mere charge is no evidence of guilt.   State v. Smith, 125 Mo. 2; State v. Taylor, 98 Mo. 240; State v. Donnelly, 130 Mo. 642; State v. Blitz, 170 Mo. 530.   (3)   There can be no question as to the impropriety and highly prejudicial character of the remarks of the prosecuting attorney in his closing argument to the jury concerning what Clarence Wigger, the accomplice, had confessed in his office concerning the guilt of the defendant and implicating him in other crimes and in attempting to give his reasons for so doing to the jury, and these remarks should not have been indulged in.   State v. Furgerson, 152 Mo. 93. (4)   The court should have sustained the demurrer to the testimony offered by the defendant at close of case on the part of the State.   State v. Roy, 83 Mo. 268; State v. Grady, 84 Mo. 220; State v. Nettles, 153 Mo. 464.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for the State.

(1)   The court did not err in overruling the motion to discharge the defendant on the ground that he had not been brought to trial before the close of the third term after the information was filed.   Sec. 2642, R. S. 1899; Fanning v. State, 14 Mo. 387; Kelley's Crim. Law & Prac., sec. 345; State v. Wear, 145 Mo. 222; State v. Robinson, 12 Mo. 592.   (2)   The court did not err in refusing an instruction in the nature of a demurrer to the evidence requested by the defendant at the close of the evidence offered by the State.   The testimony of Clarence Wigger, if believed, made a clear

case against the defendant, and the credibility of the witness, even though an accomplice, was a matter for the consideration of the jury, and not for the court. State v. Warner, 74 Mo. 83; State v. Hill, 96 Mo. 357; State v. Williams, 149 Mo. 496; State v. Dewitt, 152 Mo. 76; State v. Franke, 159 Mo. 535. Even though the witness was an accomplice, the uncorroborated testimony of such a witness is sufficient to sustain a conviction. State v. Williamson, 106 Mo. 162; State v. Black, 143 Mo. 166; State v. Tobie, 141 Mo. 561. (3)  The court did not err in permitting the prosecuting attorney to ask witness Aubuchon whether or not he stood charged in the circuit court of St. Francois county with the crime of robbery.  Such questions are permissible on cross-examination for the purpose of discrediting the witness. State v. Martin, 124 Mo. 523; State v. Pratt, 121 Mo. 574; State v. Taylor, 118 Mo. 153; Wharton's Crim. Evi., sec. 474.  (4)  Appellant complains of error because the court permitted the prosecuting attorney in his closing argument to the jury to state that Clarence Wigger had confessed to him, implicating the defendant in the crime.  As Clarence Wigger was a witness for the State and had testified directly and in detail to the defendant's guilt, it is difficult to see in what respect the reference of the prosecuting attorney to that witness's confession could have prejudiced defendant.  State v. Punshon, 133 Mo. 54; State v. Guy, 69 Mo. 430; State v. Turner, 76 Mo. 350.

GANTT, J.—On the 31st day of May, 1904, the prosecuting attorney of St. Francois county filed an information charging the defendant with the crime of arson in the third degree for the burning of a saloon, the property of Z. B. Jennings, on the 20th of January, 1903.  A change of venue was taken from the regular judge of said circuit, and Hon. E. M. Dearing, judge of the Twenty-First Judicial Circuit, was called as special judge to try the case.

The defendant was duly arraigned, entered his plea of not guilty, was tried and convicted, and his punishment assessed at a term of five years in the penitentiary. From the sentence imposed he has appealed to this court.

I. The first question arising on this appeal is the propriety of the ruling of the circuit court in denying the defendant's motion for his discharge on the ground that the State had failed to bring him to a trial at the end of the third term of the court after the information was filed. On the hearing of this motion, it appeared that another information, charging the defendant with this same offense, had been filed in the same court on the 30th day of July, 1903; that the defendant was admitted to bail on said first information, and at the August term, 1903, of said court said cause was continued on the application of the State, and was again continued on the application of the State at the November term, 1903, of said court. At the May term, 1904, the prosecuting attorney entered a *nolle prosequi* to said first information, and on the same day filed another information charging the defendant with the same offense, the latter being the information in this cause upon which the defendant was tried and convicted. The record does not show on whose application the case was continued on the new information, further than that the defendant entered into a new recognizance for his appearance at the August term, 1904, of said court. At the August term, 1904, the case was continued on the application of the State until the 29th of August, 1904, and on the last-named date it was again continued for want of time to try the same until the next term of court. At the November term, 1904, of said court, the defendant filed his motion for discharge, which was, as already said, overruled by the court and exceptions properly saved.

The contention of the defendant is that the two in-

formations should be treated as one, and that the entering of the *nolle* and the filing of the new information did not affect the right of the defendant to his discharge; that in contemplation of law it was one and the same case, and the defendant was entitled to his discharge under sections 2642, 2643 and 2644, Revised Statutes 1899. Section 2642, Revised Statutes 1899, provides that, "If any person indicted for any offense, and held to answer on bail, shall not be brought to trial before the end of the third term of the court in which the cause is pending which shall be held after such indictment found, he shall be entitled to be discharged, so far as relates to such offense, unless the delay happened on his application, or be occasioned by the want of time to try such cause at such third term." This section and its kindred sections have been in force in this State for a great number of years. It came before this court for construction as early as Robinson v. State, 12 Mo. 595, 596, and it is held in that case that the term at which the indictment is found is not to be included in the estimate of the terms at which the defendant is entitled to be tried. [State v. Haines, 160 Mo. 555.] In Fanning v. State, 14 Mo. 387, the point was made as now is made, by the defendant in that case, but it was held by this court that when the first indictment was *nol. pros'd,* it was no longer in force, and the new indictment alone and the time it was pending was to be considered.

It is therefore clear under the decisions of this court in the construction of sections 2641, 2642 and 2643, that terms of court which lapse under a prior indictment must be excluded. For this reason, the court properly overruled the motion for the discharge of the defendant.

II. It is earnestly insisted by counsel for the defendant that the evidence was insufficient to sustain a judgment of conviction, and that the court erred in re-

fusing to direct the jury to acquit the defendant. Without encumbering this opinion with a detailed statement of all the testimony, it must suffice for the purpose of this objection to state that the evidence on behalf of the State tended to prove the following facts:

In the month of January, 1903, Z. B. Jennings was living at a small place called Esther, in St. Francois county, and was there engaged in the saloon business. The defendant, George F. Wigger, and his son, were running a saloon at the same place, about three or four hundred yards to the north of the Jennings place of business. On the morning of the 20th of January, 1903, between three and four o'clock, Jennings' saloon and its contents were destroyed by fire. Incendiarism was suspected and a reward of $500 was offered by Jennings for information as to the guilty party. It was shown in evidence that the defendant had refused to sign Jennings' saloon petition, and that there was some ill feeling on the part of the defendant toward Jennings before the saloon was burned. Clarence Wigger, a nephew of the defendant, about twenty-three years of age, was living with the defendant at the time of the burning of the saloon. He appeared as a witness against the defendant at the trial, and testified that the defendant offered him $50 if he would burn Jennings' saloon; that he agreed to do it, and that defendant got the oil and rags for that purpose; that they together, on the night of the 20th of January, 1903, went to the Jennings saloon, and that while defendant stood guard he, Clarence Wigger, set fire to the saloon. Sam Wigger, a distant relative of the defendant, testified that the defendant offered him $100 to burn Jennings' saloon about three or four months before the same was burned. Cy Lore, a witness for the State, testified that prior to the burning of the saloon, the defendant had offered him all the whiskey he could drink if he would burn Jennings out.

The defendant was a witness in his own behalf, and

denied ever having made an offer to Clarence Wigger, Sam Wigger, or any body else, as an. inducement to burn Jennings' saloon, and further denied generally his guilt of the crime charged.  The defendant further testified that in the summer of 1903, Clarence Wigger, having been arrested on a charge of robbery, and having escaped from the officers, came to the defendant's place at night and requested defendant to go on his bond.  That upon defendant's refusal, Clarence Wigger then asked the defendant for $100 to leave the country; that defendant refused to give him the money. There was evidence for the defendant tending to prove that after the burning of Jenning's saloon, and in the same year, one Alex Robinett wanted Jennings to pay him part of the reward money in advance to work up the evidence in the arson case, but Jennings refused to pay in advance, and Robinett then referred Jennings to Sam Doss.  That thereafter Doss brought Clarence Wigger to the office of the prosecuting attorney of St. Francois county, and that Clarence Wigger then confessed to the burning of the Jennings saloon, and also confessed to his guilt of several robberies committed the same year after the burning of the Jennings property, and that thereupon Sam Doss received part of the reward offered by Jennings.  It was shown that Clarence was jointly indicted with Robinett in Washington county for the crime of robbery, and that Clarence Wigger, Robinett, Doss and Freeman were then under indictment in Bollinger county on the charge of robbery.  That at the time of the trial of the defendant, Clarence Wigger was then out on bail on the charge in the last-mentioned indictment, and that the prosecuting attorney of said St. Francois county was surety on his bond.  There was evidence tending to prove that the defendant was worth from $20,000 to $25,000, and at the time of the trial there were pending against him in the same court civil suits for damages arising out of the same facts involved in the criminal charge for

which he was then on trial, aggregating between $15,000 and $20,000, and that counsel for the State in the criminal case were also counsel for Jennings, the plaintiff, in said civil suits.

It is urged that the State failed to prove by Clarence Wigger the name of the boy whom the witness Wigger stated the defendant hired to purchase the oil with which the building was burned, and failed to produce the boy, or account for his absence, and also failed to procure or account for the absence of the witness Sam Doss. It cannot be doubted, we think, that if the testimony of Clarence Wigger was believed by the jury, it was sufficient to establish that the defendant was the instigator of the crime of the burning of Jennings' saloon building, and was present aiding, assisting and directing Clarence Wigger in perpetrating the crime. It follows then that Clarence Wigger, the witness, was an accomplice in the commission of that crime. If anything is settled in the law of this State, it is that the evidence of an accomplice who confesses his own guilty participation in a crime, is competent against his accomplice on trial for the same offense. And the credibility of such a witness is a matter for the consideration of the jury trying the case. [State v. Hill, 96 Mo. 357; State v. Williams, 149 Mo. 496; State v. Franke, 159 Mo. 535.] And it is also the accepted doctrine that the evidence of an accomplice, even though uncorroborated, is sufficient to sustain a conviction if believed by the jury. [State v. Williamson, 106 Mo. 162; State v. Black, 143 Mo. 166; State v. Tobie, 141 Mo. l. c. 561; State v. Marcks, 140 Mo. 656; State v. Harkins, 100 Mo. 666.] The failure of the State to produce the other witnesses to corroborate the testimony of the accomplice could have operated only against the State, and was a legitimate subject for discussion before the jury, but would not authorize this court, which has not the opportunity of seeing and hearing the witness testi-

fy, to interfere with the verdict of the jury which did see and hear the witness, and observe his manner of testifying, as well also the manner and testimony of the defendant and his witnesses. Accordingly, it must be ruled that the court did not err in submitting the evidence to the jury.

III. Error is predicated upon the action of the circuit court in permitting the prosecuting attorney to ask the witnesses for the defendant, Aubuchon, Benham and Taylor, if they had not been charged with the crime of robbery, and if informations or indictments had not been preferred against them. Over the objections and exceptions of the defendant, the court permitted these questions and required the witnesses to answer the same. It is now insisted by the State in its brief that these questions were justified by the rulings of this court: In State v. Taylor, 118 Mo. 153, in which it was held that upon a cross-examination of the witness it was competent to ask him, "After this thing occurred, were you not arrested for stealing billiard balls from Boulander's saloon, and sent to jail?" and State v. Pratt, 121 Mo. l. c. 574, in which it was ruled that it was competent to ask the witness if he had been arrested and put in jail in Kansas City for stealing a pitch-fork, and State v. Martin, 124 Mo. 523, in which it was ruled that it was proper to ask a witness, on cross-examination, how many times he had been in the county jail on sentences for crime. As to all of these cases, and the case of State v. Miller, 100 Mo. 606, upon which they are all bottomed, the questions all implied a conviction for the offenses with which the witnesses were charged, and the objection went to the fact that the convictions were not shown by the record, but it will be observed that the question in this case goes simply to the fact that a charge either by indictment or information was pending against the witness and did not go to the fact of a conviction thereof, and the ques-

tion arises, is it competent to discredit a witness by asking him whether he has been charged with a criminal offense which would affect his credibility, and conceding that he was not convicted thereof? One of the learned counsel for the State very candidly stated in the discussion of this objection before the court that he did not purpose to assert that it was the law of this State that a mere charge was any evidence of guilt. In State v. Howard, 102 Mo. l. c. 148 and 149, the witness for the defendant, on cross-examination by the prosecuting attorney, was asked if he had ever been arrested for stealing, to which he replied that he had never been convicted of stealing and had never been convicted in his life. And then, over the objection of the defendant, he was asked if he had been arrested for stealing. In passing upon the admissibility of these questions, this court, through Judge BLACK, said: "A conviction may be put in evidence for the purpose of discrediting a witness, but the mere fact that he has been arrested is inadmissible for any such purpose. The evidence should have been excluded." But in that case, as the evidence showed that the defendant had been arrested for minor offenses, and that he was never convicted, it was held that the error was a harmless one. Under our system of criminal procedure, nothing is more common than for the court to instruct the jury that the indictment or information against the defendant is a mere formal charge, and is no evidence of the guilt of the defendant of the charge therein contained, and no juror should permit himself to be in an way biased or prejudiced on account of the filing of the information against him, and so the court instructed in this case. This being so, how can it be logically or in good reason said that the mere filing of an information or indictment against a party, upon which no conviction has been had, ought to be admitted as affecting the credibility of such witness? Section 4680, Revised Statutes 1899, provides that "any person who has been con-

victed of a criminal offense is a competent witness, but such conviction may be proved to affect his credibility by the record or by his cross-examination." It will be observed that this section permits proof of a conviction to affect the witness's credibility, and not a mere charge of criminal offense, and by implication at least excludes the latter as any evidence affecting the credibility of the witness. We are of the opinion that the question in this case, which referred to an entirely distinct offense and was limited to the mere fact that a criminal charge was pending against the witness, was improper and should have been excluded by the circuit court.

IV.    This brings us to the next assignment of error, to-wit, the impropriety and prejudicial character of the remarks of the prosecuting attorney in his closing argument to the jury as to certain statements made to the prosecuting attorney by the State's witness, Clarence Wigger. The bill of exceptions recites that in his closing address to the jury, the prosecuting attorney stated to the jury as follows: "I will repeat that the confession made by Clarence Wigger to me in my office was in the closing days of July, 1903, near the end—July has 31 days in it, and it showed to me that that confession made to me in that office not only involved this defendant on the charge for which he is now being tried, but involved Alex Robinett in the charge of robbery up there," to which counsel for the defendant objected. The prosecuting attorney continued: "And upon that charge as made upon Alex Robinett the testimony of the witnesses in this case that was sworn on the stand here shows that Alex Robinett in the Washington County Circuit Court entered a plea of guilty there and is now in the Missouri penitentiary, as the testimony shows as sworn to here." Counsel for the defendant: "I think that is going beyond all reason as to the confession against Robinett, as that has never

been presented to this jury." By the court: "I will see that he stays in the record." Attorney for the defendant: "I object to that statement that Robinett was in his office." By the court: "Make your objection." Counsel for the defendant: "The objection is this: I think anybody can understand it. There is no testimony on trial in this case as to what was·said by Robinett in his office. We except." By the court: "I will say this, I want the jury to notice, they know what the testimony was, they can hear the argument, and if that is not in the testimony they can — " By counsel for the defendant: "We don't know what the minds of this jury might be and we must save our objections." By the court: "Yes, sir." The prosecuting attorney continued: "He made a confession that involved Robinett in the circuit court of Washington county." By counsel for the defendant: "We except to that." By the prosecuting attorney: "In the circuit court in Washington county — Alex Robinett in the circuit court of Washington county entered a plea of guilty to that charge based on the confession of Clarence Wigger." Counsel for the defendant: "We object to that." By the court: "Note your exceptions." By the prosecuting attorney: "And as stated by the witnesses on this stand that he is now serving a term in the penitentiary." Counsel for the defendant: "We except to that." By the prosecuting attorney: "Before he had been put on his trial it had to be known whether or not he was involved in that robbery." By the court: "You are getting out of the record, Mr. Marbury. I do not want Mr. Marbury to get out of the record." Mr. Marbury: "I propose to make my argument to this jury in accordance to the rules of this court and I don't want to be interrupted." "In the face of that if Clarence Wigger's confession as to Alex Robinett followed, and in the same confession he confessed against this man [meaning and pointing to defendant] may it not be concluded that the confes-

sion against this man [pointing to defendant] is also true?'' Counsel for defendant: ''We object to any confession made by Robinett and ask the court to rebuke him and if not we except.'' Mr. Marbury: ''Clarence Wigger stated to me that he wanted to make a clean breast and unload his conscience and state the truth concerning everything that he had been implicated in.'' Counsel for the defendant: ''We object to that and except.'' Mr. Marbury: ''He said if he had to go to the penitentiary he wanted to make a clean breast of everything and forever clear his conscience.'' Counsel for the defendant: ''I desire to object to that for the reason that there is no testimony warranting such a statement in this case. Mr. Marbury did not testify and he cannot take advantage of his office now.'' Mr. Marbury: ''Mr. Wigger testified.'' Counsel for the defendant: ''Your honor.'' By the court: ''Sit down, I am getting tired of this.'' Mr. Marbury: ''He said, 'I did it, because if I got to go to the penitentiary I will go, but I want to forever quit my criminal business and lead the life of an honest man.' '' Counsel for defendant: ''I desire to get our exceptions.'' Mr. Marbury: ''Coming up to this confession, when he confessed to all this, he confessed against George F. Wigger, as the testimony shows. The man who got him to burn this building, and this was his first offense, his uncle, started him out on his criminal career.'' Counsel for the defendant: ''We object to that. There is no testimony in this case from Clarence Wigger or anyone else that his uncle started him out on his criminal career and there is no testimony showing anything of that kind. I except to that statement unless he is called down by the court.'' By the court: ''There is no evidence showing anything of that kind.''

There can be no question as to the impropriety and highly prejudicial character of the remarks of the prosecuting attorney as to what Clarence Wigger, the accomplice, had confessed in his office concerning the guilt

of the defendant. Neither the prosecuting attorney nor the witness Wigger had testified to any such statements, and the defendant had had no opportunity to cross-examine either upon that question, nor to object to the competency of said statements made in the absence of the defendant, and the circuit court should have stopped the prosecuting attorney when he began to make the statements as to what Clarence Wigger had stated to him in his office, and have rebuked him for going outside of the record. It was entirely competent for the prosecuting attorney to have discussed the testimony of Clarence Wigger given before the jury in the presence of the court, but the fact that Wigger had testified against the defendant was no excuse for the prosecuting attorney to go outside of the record and detail matters which were not in evidence and which were clearly calculated to bolster up the evidence of Clarence Wigger. The defendant was entitled to a verdict by the jury based upon the evidence in the case under the instructions of the court. Counsel in no case have the right to make statements of evidence which may affect the verdict of the jury which are not supported by the testimony delivered under oath in the presence of the jury. This court has so often rebuked the conduct of the attorneys in this respect, both in civil and criminal cases, that it would seem that the trial courts would prevent such conduct, especially where the life or liberty of a citizen is at stake. [State v. Jackson, 95 Mo. 652; State v. Bobbst, 131 Mo. l. c. 338, 339; State v. Ulrich, 110 Mo. l. c. 365; State v. Furgerson, 152 Mo. l. c. 99.]

It is almost unnecessary to add that the mild rebuke of the judge in this case fell far short of curing this error.

V. There are other assignments of error, but as this case must be reversed and remanded for the errors noted, they are such as can be readily avoided upon a

new trial of the case. The instructions seem to submit the case fairly to the jury. For the errors indicated, the judgment is reversed and the cause remanded for a new trial. *Burgess, P. J.,* and *Fox, J.,* concur.