State v. Mastin.

---

## THE STATE v. JOHN J. MASTIN, Appellant.

### Division Two, March 28, 1919.

1. **FALSE PRETENSE:** Information. The information, set out in the statement, charging that defendant, by falsely representing himself to be in the employ of the United States at one dollar a year and by making public speeches and soliciting funds for the relief of war sufferers, fraudulently obtained twenty-five cents from a named auditor, is *held* to sufficiently charge the offense denounced by Section 4765, Revised Statutes 1909, as amended by Laws 1913, page 222.

2. **OPENING STATEMENT:** Preservation for Review. Unless reference is made in the motion for a new trial to the action of the trial court in overruling objections to the opening statement of the prosecuting attorney, the rulings cannot be reviewed on appeal.

3. **DEFENDANT AS WITNESS:** Cross-Examination. The cross-examination of defendant, by questioning him concerning matters to which he made no reference in his direct testimony, though technically a violation of the well-known rule, is not prejudicial error, if it pertains to immaterial matters and is of such a nature as not to prejudice the jury against him.

4. **EVIDENCE:** Other offenses: No Objection. The admission of testimony that defendant, charged with obtaining money by false pretense by making public speeches in which he declared himself an authorized employee of the Government to solicit money for war sufferers, made the same speech at other places and that persons hearing him, relied upon his representations and made small contributions, if admitted without objection, cannot be considered on appeal.

5. **ARGUMENT TO JURY:** Preservation for Review. Remarks made by the prosecuting attorney in his closing argument to the jury, alleged to be improper, if not preserved in the bill of exceptions, cannot be reviewed on appeal. A mere statement in the motion for a new trial that certain remarks were made is not proof that they were made.

6. **INSTRUCTIONS:** On Acquittal Count. Instructions upon issues involved in the count of the information upon which there was an acquittal cannot on appeal be held to be erroneous or to call for a ruling.

7. ———: Refusal. To refuse instructions which correctly state the law is not error if the issues and principles contained in them are covered by others given.

8. ———: False Pretense: Omission of Word Cheat. If the instruction required the jury to find that defendant acted with the "intent of defrauding" the prosecuting witness, the omission therefrom of the word "to cheat" or "cheating" is not reversible error, although the statute requires that the intent must be to "cheat and defraud." The two words are synonyms, and the meaning conveyed by the word "cheat" is included in the word "defraud."

9. ———: ———: Intent to Keep Money: Broader Than Charge. The statute only requires that the defendant, by the means in it enumerated, "with intent to cheat and defraud, shall obtain from any person, any money;" it does not require that the jury find that he intended to keep the money thus obtained. Hence, an instruction which, after requiring the jury to find that defendant with intent to cheat and defraud obtained money from the prosecuting witness, told them that if they found he "did not intend to keep the money as his own to do with as he pleased" they would find him not guilty, was broader than the information, but it was an error in his behalf, and imposed on the State an additional burden, of which he cannot complain.

Appeal from Montgomery Circuit Court.—*Hon. Ernest S. Gantt*, Judge.

AFFIRMED.

*Claude R. Ball* for appellant.

(1) The alleged false representations are too absurd to induce belief in their reasonableness, and the evidence of Nebel shows this clearly. State v. Cameron 117 Mo. 641; State v. Lawrence, 178 Mo. 350. (2) The information does not describe the trick or false pre-

tense and therefore charges no crime denounced by either Section 4565 or Section 4765. State v. Pickett, 174 Mo. 663. (3) The statement of the case to the jury was an unpardonable error and was intended to poison the minds of the jury against the defendant, and defendant's objections should have been sustained and standing alone is sufficient to reverse this judgment of conviction. (4) The cross-examination of the defendant by the prosecuting attorney, on matters not brought out in chief, is in strict violation of Section 5242, and objections were timely made. State v. Potts, 239, Mo. 403; State v. Nibarger, 255 Mo. 296. (6) After Prosecuting-Attorney Nowlin, Hammett and Wagener had testified about their conversation with defendant at Bellflower, it was, to say the least, unfair to the defendant, for the court to permit him to be cross-examined about matters that they did not detail as part of their conversation with defendant. "While it may not of itself have been reversible error, the manner of getting it before the jury must be considered unfair practice." Wojtylak v. Coal Co., 188 Mo. 287. (7) The improper conduct of the prosecuting attorney in his closing argument and improper remarks was in violation of the rights of the defendant and if no other error was in the record than this it is sufficient to reverse the judgment in this case. State v. Bobbst, 131 Mo. 338; State v. Potts, 239 Mo. 403. (8) The court erred in admitting the testimony of Jones, Cox and Martin, postmasters at Frankford, Foley and Perry, showing that they contributed at meetings held by Mastin at those places and showing the total amount of such contributions, because, among other reasons, the defendant was not on trial for defrauding the public and because the evidence shows that defendant had not retained one cent entrusted to his care and the court should have given defendant's instruction withdrawing their evidence from the consideration of the jury. (9) The instructions of the court we respectfully submit are not justified by the authorities. They are

277 Mo.—32

erroneous, because they do not follow the charge in the information, and are broader than the charge. The information cannot be cured in this manner. State v. Smith, 119 Mo. 447. (10) Instruction 3, says, "And if you find that at the time the said moneys were collected and delivered to the defendant, if you so find, the defendant intended to keep said moneys as his own to do with as he pleased, and if you further find from the evidence that the defendant did keep said moneys so collected as his own," etc. And it further in effect said that if after receiving said money defendant gave it to either Red Cross, the American Fund for the French Wounded, or to any other person, association, or corporation, that is no defense in this case. Such an instruction is not the law and is not the law of this case And further such instruction is not based upon the information.

*Frank W. McAllister*, Attorney-General, and *Clarence P. LeMire*, Assistant Attorney-General, for respondent.

(1) Count one of the information is sufficient and has been substantially approved by this court. Sec. 4765, R. S. 1909, Laws 1913, p. 222; State v. Young, 266 Mo. 730; State v. Young, 195 S. W. 998; State v. Wilson, 223 Mo. 159; State v. Loisch, 180 S. W. 875. (2) The testimony of Jones, Cox and Martin was admissible to prove intent. State v. Rasco, 239 Mo. 575; State v. Wiesman, 238 Mo. 555; State v. Hyde, 234 Mo. 224; People v. Molineux, 168 N. Y. 264; State v. Wilson, 223 Mo. 169; State v. Turley, 142 Mo. 411. (3) The instructions given by the court of its own motion together with those given on behalf of defendant were in approved form and cover all the issues in the case. State v. Young, 195 S. W. 198; State v. Young, 266 Mo. 723; State v. Meals, 184 Mo. 256; State v. Campbell, 210 Mo. 229. (4) The court did not err in permitting the prosecuting attorney to cross-

examine the defendant as to matters brought out in the direct examination. State v. Kaiser, 124 Mo. 651; State v. Clinton, 67 Mo. 383. (5) Argument of counsel will not be reviewed in the absence of exceptions saved to the ruling of the court thereon. State v. Whitsett, 232 Mo. 511; State v. Harvey, 214 Mo. 403; State v. Clapper, 203 Mo. 549.

WILLIAMS, J.—The information upon which defendant was tried in the Circuit Court of Montgomery County, was in two counts. He was acquitted upon the second count, but was convicted upon the first count and his punishment was assessed at two years in the penitentiary. Defendant duly appealed. Count one of the information, omitting formal parts, was as follows:

"S. S. Nowlin, Prosecuting Attorney within and for the County of Montgomery, in the State of Missouri, under his oath of office, informs the court and charges the fact to be that one John J. Mastin on or about the 11th day of June, 1918, in the County of Montgomery, in the State of Missouri, then and there with intent unlawfully and feloniously to cheat and defraud one Forest Nebel, then and there unlawfully, knowingly and feloniously by use of a trick and deception and false and fraudulent representation, statement and pretense, did falsely and fraudulently represent and pretend to the said Forest Nebel that he, the said John J. Mastin, was then and there in the employ of, at a salary of one dollar per year, and the representative and authorized agent of the United States Government for the purpose of raising funds for war work of various kinds and with which to relieve those who were suffering on account of the present war, and that he, the said John J. Mastin, had full right and authority from the United States Government then and there to collect money as an employee of the said United States Government to be used in the prosecution of the present war, and for the relief of the aforesaid war

sufferers. That under the aforesaid false and fraudulent representations, he the said John J. Mastin, after having then and there made most eloquent patriotic address and speech to the aforesaid Forest Nebel and others then and there assembled, in pursuance of his purpose to cheat and defraud did cause to be taken for him as the representative and authorized agent of the United States Government as aforesaid a collection for the aforesaid war work and the relief of war sufferers and the said Forest Nebel believing the said false and fraudulent representations and statements and pretenses made as aforesaid by the said John J. Mastin to be true and being deceived thereby, was induced by reason thereof and did then and there contribute an give and pay to the said John J. Mastin the sum of twenty-five cents, lawful money of the United States, of the value of twenty-five cents, and the said John J. Mastin by means and use of said trick, deception, false and fraudulent representations, statements and pretenses so made as aforesaid, then and there unlawfully, knowingly and feloniously did obtain from him the said Forest Nebel the sum of twenty-five cents, the money and property of the said Forest Nebel, with intent then and there unlawfully and feloniously to cheat and defraud him, the said Forest Nebel of the same.

"Whereas, in truth and in fact, the said John J. Mastin did not have any right or authority then and there to represent the said United States Government, and was not then and there the representative or authorized agent of said Government to collect money for any sort of war work or for the relief of war sufferers. That he was not then and there in any manner employed by the said United States Government, and he, the said John J. Mastin, well knew that he, the said John J. Mastin, did not have any right or authority then and there to collect or receive money for or on account of or as an employee of the said United States Government or as an employee of said

Government to collect and receive money for war work or for the relief of war sufferers, and he, the said John J. Mastin was not then and there in any manner whatsoever an employee of the said United States Government; against the peace and dignity of the State.''

The evidence upon the part of the State tends to prove the following facts:

On June 11, 1918, appellant delivered a patriotic lecture at Price's Branch, a small town in Montgomery County, Missouri. He made a very eloquent speech, touching the hearts of his hearers; he stated that he had been ''over there'' and detailed many atrocities committed by the German soldiers in Belgium. Near the close of his speech he stated that he was working for the Government on a salary of one dollar per year and that he was taking voluntary contributions for the wounded soldiers of France and Belgium; that he did not need the money personally; that it all went to help the war sufferers, and that he always contributed liberally to local Red Cross organizations. At the close of his speech and at appellant's request, the hat was passed around to receive voluntary contributions for the above purpose.

One Forest Nebel, the prosecuting witness in this case, was in the audience and having heard the speech, believed that appellant was the agent of the Government and authorized by the Government to solicit donations for the benefit of the wounded soldiers of France and Belgium, and so believing and by reason of the statement made by the appellant, contributed the sum of twenty-five cents.

It was shown that appellant had made similar speeches at near-by towns shortly before and shortly after the one in question and at each of these places people, believing and relying on his statement that he was in the employ of the Government, contributed small sums.

On June 16, 1918, the prosecuting attorney of Montgomery County, together with two or three other

citizens of the county, called upon appellant at the hotel in Bellflower, Missouri. In answer to questions there made by the prosecuting attorney and others the appellant stated that he was not employed by the Government to make the speeches or take the collections; that the money which he collected was his, that he did not need to account to anyone for it, but that he could do with it as he pleased. In a day or two after this interview defendant was arrested and remained in jail until his trial.

The evidence upon the part of the defense was substantially as follows:

Some of appellant's witnesses stated that they heard the appellant make the address in question, but did not hear him say that he was working for the Government. Some of appellant's witnesses, however, did testify that in the speech appellant stated that he was working for the Government at one dollar per year. The appellant, testifying in his own behalf, stated that he did not represent himself to be an agent or representative of the Government, but that in his speech he made the following statement:

"In order that you may understand that there is a call for every man to do his bit, and that in this work there is no spirit whatever of self-centered interest, I want to say that there are twenty thousand men, twenty thousand speakers, who are doing the same identical work that I am doing for one dollar per year; they come from the Publicity Department at Washington, and they are laying their very lives upon the alter of their country; they are sacrificing that others may live."

Appellant further testified that at the close of his speech he made the following remark:

"For four months and a half I have been doing all that I could along these lines. I have been giving liberally to the Red Cross; I have been giving liberally to thrift stamps; I have been using all the ability in

my power for my Government that I might have a part in this great work—the emancipation of humanity. I am not on a mission of charity. It is not my purpose to come here and beg you. For several months I have been donating my collections, outside of the expenses, to the Red Cross. For two weeks I am going to give all that I get in the voluntary contributions to the French Fund for the Wounded, and if you people want to contribute anything you can do so; it must be voluntarily. If you want to give a penny, give it, and if there is a man in this house who wants to give as much as one dollar, let me know who you are and I will see that you get one of Gypsy Smith's latest books, 'Our Boys,' and a part of this goes to the Society for the French Wounded.''

Appellant further testified that at the time he collected the money he did not intend to appropriate the fund to his own use, and that he had not so appropriated it. He testified that, after paying for the Gypsy Smith books which he delivered and after paying his necessary expenses, the net profit remaining from his speeches in Montgomery County was $69.31, and that on June 28, 1918 (after he was arrested), he forwarded this amount by draft to the American Fund for French Wounded, 73 Park Avenue, New York City, A copy of the letter sending the money, together with a letter from the American Fund for French Wounded, acknowledging receipt of the above amount on July 2, 1918, were introduced in evidence.

I.   The information in this case is drawn under Section 4765, Revised Statutes 1909, as amended by Laws 1913, page 222.

The information follows substantially the form which was approved by this court in the case of State **Information.** v. Wilson, 223 Mo. 156. We are of the opinion that the information sufficiently charges an offense under the above statute.

II. It is contended by appellant that the court erred in overruling his objection to certain portions of the opening statement made to the jury by the prosecuting attorney. Concerning this point it is sufficient to say that no reference whatever is made to the same in the motion for a new trial. The point has not theretofore been saved for appellate review.

Opening Statement.

III. It is further contended that the court erred in permitting the prosecuting attorney, over appellant's objection and exceptions, to cross-examine the defendant about matters which were not referred to in his examination ·in chief.

Cross-Examination.

We have carefully and painstakingly read the lengthy examination of the appellant, for the purpose of passing upon the merit of the above point. The only improper cross-examination permitted by the court which we are able to discover was that portion of the cross-examination wherein the prosecuting attorney was permitted to interrogate the defendant as to where he had lectured each day during the two weeks preceding his visit to Montgomery County. In the examination in chief no reference was made to defendant's whereabouts or where he lectured during the above period, and the cross-examination was therefore at least a technical violation of the well known rule. In reply to the questions defendant answered that he did not remember and could not tell unless he could refresh his memory from a memorandum which he did not have with him.

In the case of State v. Barrington, 198 Mo. 23, l. c. 81, the rule here applicable was stated as follows:

"In order to warrant the reversal of a judgment on the ground of an improper cross-examination, we take it that, giving the statute upon that subject a reasonable construction, such cross-examination must have some reference to matters material in the cause,

to which the defendant, as a witness, did not refer in his examination in chief; or if immaterial, it must be along a line and upon subjects which would have a tendency to prejudice the jury against the defendant or his case."

The cross-examination of which complaint is made was entirely immaterial and was of such nature as would not in any manner tend to prejudice the jury against the defendant. We therefore disallow this point.

IV. It is contended that the court erred in admitting evidence to the effect that defendant had made the same speech at other places and that persons hearing said speeches and relying upon like representations had made small contributions. This evidence was admitted without any objection being made thereto by defendant. The above point is therefore not here involved.

*Other Crimes.*

V. It is also contended that the prosecuting attorney made improper remarks in his closing argument before the jury. Upon an inspection of the record we find that the alleged improper remarks were nowhere properly preserved in the bill of exceptions. The only reference concerning the same is found in the motion for a new trial. It is well settled that matters of exception should be preserved in the bill of exceptions and that the mere statement in the motion for a new trial as to what occurred at the trial is no proof that the same did in fact occur. The above point was therefore not properly preserved for appellate review. [State v. Teeters, 239 Mo. 475, l. c. 483.]

*Argument to Jury.*

VI. It is contended that the court erred in giving each of the nine instructions which it gave of its own motion and likewise erred in refusing to give fifteen different instructions requested by the defendant. It would serve no useful pur-

*Instructions.*

pose to copy said instructions into the opinion. Many of these instructions were upon issues involved in the second count of the information upon which there was an acquittal. With those instructions we are not now concerned.

We are unable to discover any reversible error in the remaining instructions given by the court. Nor do we discover any reversible error in the refusal of instructions. In so far as the refused instructions correctly state the law the same had already been covered in the instructions given.

While we are of the opinion that the instructions could have been improved as to their grammatical arrangement and construction yet we are unable to find prejudicial error therein.

Instruction One required the jury to find that the defendant acted with the *"intent of defrauding"* the prosecuting witness. It is true the statute prescribes that the intent must be to "cheat and defraud," and while it has been held to be reversible error to omit in the instruction the whole of the phrase, "with intent to cheat and defraud" (State v. Norton, 76 Mo. 180, l. c. 181-2; State v. Jackson, 112 Mo. 585, l. c. 590), we have found no case dealing merely with the omission from the instruction of the word "cheat." Since the words "cheat" and "defraud" are correct synonyms, each of the other (See Webster's International Dictionary), we do not believe that the mere omission of the word "cheat" operated, under the circumstances, to omit any essential element of the offense, but that the meaning conveyed by the word "cheat" was already included in the word "defraud," an for that reason we hold the omission did not constitute reversible error.

It is further contended that the instructions given by the court of its own motion were erroneous in that they were broader than the charge contained in the imformation.

Instruction One, after requiring the jury to find all the essential elements of the crime, required the jury,

as a prerequisite to a conviction, to find, in addition thereto, the following: "*and* if you further find from the evidence that at the time said money was collected from said Nebel and delivered to the defendant that he, the defendant, intended to keep said money as his own, to do with as he pleased, and if you further find from the evidence that the defendant did keep said money as his own to do with as he pleased, then you will find the defendant guilty on the first count of the information," etc.

Instruction Three told the jury that if they found defendant "did not intend to keep the money as his own to do with as he pleased," etc., they would find him not guilty.

All that the statute requires (Laws 1913, pp. 222) is that the defendant by the means therein enumerated, "with intent to cheat and defraud shall obtain . . . from any person . . . any money," etc.

It is therefore seen that it is the intent "to cheat and defraud" the person who surrenders the money that is the very essence of the offense. What his intention may be with reference to using the money is not, strictly speaking, an element of the offense. The instruction perhaps did in a sense require the jury to find more facts than were necessary to support a conviction, but the only effect of this enlargement was to throw an additional burden upon the State. It could not have resulted in injury to the defendant, but under the rather ingenius defense which the defendant was permitted to set up we are of the opinion that the above feature of the instructions were beneficial rather than prejudicial.

The judgment is affirmed.

All concur.