STATE of Missouri, Respondent,

v.

James McKISSIC, Appellant.

No. 49067.

Supreme Court of Missouri.

Division No. 2.

June 11, 1962.

Richard F. Koch, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., James P. Jouras, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

James McKissic has been found guilty of robbery in the first degree. There was a charge and finding by the court of a prior felony conviction and, therefore, the appellant was sentenced to seven years' imprisonment.

These were the circumstances of the robbery: About 7:30 a. m., on December 24, 1960, Fred Grenzer opened his employer's liquor store, the Martin Liquor Store at 5307 Easton Avenue. In about fifteen minutes McKissic entered the store, as he often did, and purchased a bottle of wine. Almost immediately Robert Williams entered the store "with automatic revolver and told me to move on," threatening to put Grenzer in the icebox. Williams pointed the gun at Grenzer from beneath McKissic's arm and while in this position Trosper Reese entered the store and took $32 from the cash register. At the direction of Williams, Grenzer, together with McKissic, entered the washroom and Williams, Reese and another man outside the door, Moore, left. According to Grenzer the unusual thing about McKissic was that he was quite talkative when he entered the store, during the holdup the robbers did not say anything to McKissic, and when he wanted out of the washroom McKissic said, " 'Don't go out, you are liable to get hurt.' " The washroom was very small and McKissic stood in front of Grenzer and would not get out of the door, "I even pushed him out of the way and went out," and almost immediately

the police arrived. McKissic remained and as Grenzer described Williams and Reese, "was disputing some part of the description I gave." The next time Grenzer saw McKissic was on January 15, 1961, at the Page Boulevard police station. Grenzer "simply told him I wanted to know the truth, and that's what he told me." McKissic started off by saying that "he didn't want to put the finger on anybody," and then he said that the night before, at Williams' house, "they had framed up this robbery." McKissic was to enter the store and buy the wine and Williams was to follow and stage the holdup. The following morning McKissic, Williams, Moore and Reese rode in Williams' automobile to a vacant lot across the street from the liquor store and the robbery was committed. After leaving the liquor store McKissic went to the Williams' residence at 5569 Cabanne and Sally Williams gave him $8 "as his share."

In these circumstances, in a substitute information (V.A.M.S., Sec. 545.300), McKissic was charged with robbery in the first degree. V.A.M.S., Sec. 560.120. After alleging the prior conviction, the information alleges that on December 24, 1960, McKissic "with force and arms, by means of a dangerous and deadly weapon, to-wit; a pistol, in and upon one Fred J. Grenzer feloniously did make an assault; and the said Fred J. Grenzer in fear of an immediate injury to his person, then and there feloniously did put; and by force and violence to his person thirty-two dollars * * feloniously and violently did rob, steal, take and carry away * * *." This information directly charges McKissic with robbery in the first degree. State v. Moore, Mo., 347 S.W.2d 195. The state has misconceived the point made for appellant by his court-appointed counsel, after the prosecutor's opening statement counsel objected that the information charged "this defendant as a principal," that he was not charged "in conjunction with other persons," and that the proof, as stated by the prosecutor, would not support the information. Aside

from the fact that "No assignment of error respecting the sufficiency of the information" is necessary (Sup.Ct. Rule 28.-02, V.A.M.R.), in his motion for a new trial the appellant makes the point that this information does not fairly apprise him of the nature of the accusation in that it charges that he acted personally and did not allege conspiracy or that he acted with others. It was said that failure to charge him as an accessory rather than as a principal and trying him on that theory did not properly apprise him of the nature of the charge and that in that connection the court erred in not limiting the testimony of Grenzer and the police officers "to the words and actions of the defendant alone" and permitted them to relate the actions and statements of others involved in the offense.

■ While a statute plainly provides that if two or more persons commit an offense they shall be jointly charged, failure to join them does not invalidate the indictment or information: "When two or more persons are charged with having committed an offense jointly, all concerned shall be included in one indictment or information, but the failure to so join them shall not invalidate the pleadings." V.A.M.S., Sec. 545.140. The rule reads, "All persons charged with the joint commission of an offense may be included in one indictment or information." Sup.Ct. Rule 24.05. But in connection with the rule and the statute there is another statute that has been in force since 1825, "Every person who shall be a principal in the second degree in the commission of any felony, or who shall be an accessory to any murder or other felony before the fact, shall, upon conviction, be adjudged guilty of the offense in the same degree, *and may be charged, tried, convicted and punished in the same manner, as the principal in the first degree.*" V.A.M.S., Sec. 556.170; State v. Jones, 339 Mo. 893, 98 S.W.2d 586. Here, according to McKissic's statement as testified to by Grenzer, the jury could reasonably find a conspiracy (State v. Mangiaracina, Mo., 350 S.W.2d

796), the appellant was present and in the circumstances he was an accessory before the fact, if not a principal, and he could have been jointly charged with the others (State v. Roderman, 297 Mo. 143, 248 S.W. 964) or as an aider or abettor (State v. Herman, Mo., 280 S.W.2d 44), and it was permissible to charge him alone with having committed the offense and the fact did not unfairly infringe his right "to demand the nature and cause of the accusation," Const.Mo.1945, Art. 1, Sec. 18(a), V.A.M.S. State v. Moore, Mo., 347 S.W.2d 195; 42 C.J.S. Indictments and Informations §§ 157–158, pp. 1104–1106.

The conspiracy continued to the division of the proceeds of the robbery (State v. Costello, Mo., 252 S.W. 727, 729), and the briefly noted circumstances support the jury's finding of the appellant's guilt as charged. State v. Tripp, Mo., 303 S.W. 2d 627. Furthermore, in these circumstances it was not necessary to show that McKissic personally committed all the acts constituting the elements of the offense, the acts of his coconspirators were admissible against him, and in connection with the principal charge the court did not err in giving the jury the conventional, abstract instruction on acting in concert with others with a common intent. State v. Johnson, Mo., 347 S.W.2d 220; State v. Mangiaracina, supra.

The appellant did not give a written statement or confession and it does not appear until after the opening statement by the prosecutor whether the defendant and his counsel were aware of the fact that after his arrest "this defendant gave details of his implication in the robbery." If appellant's counsel had prior knowledge, or even after he became aware of the fact of either a written confession or an oral admission, the usual procedure was not followed, there was no request for the court to determine preliminarily whether any confession the appellant may have made was voluntary or involuntary. State v. Di Stefano, Mo., 152 S.W 2d 20; State v. Green, Mo., 236 S.W.

2d 298, 300. When Grenzer started to repeat what McKissic had said to him at the police station there was a request "to have hearing as to that prior to the time the testimony goes in." But counsel's statement was that McKissic was not a "very clear thinker," that he was usually under the influence of alcohol and wine, that he was picked up at night and in custody and counsel thought "the circumstances of the case at the time he made these confessions should be revealed." When it was stated that there were no written confessions, the quoted objection was overruled. Grenzer then gave the indicated testimony and there were no further objections or requests directed to the involuntariness of any admission or confession McKissic may have made. In cross-examining Grenzer it was developed that there were no "promptings from me" as to what he should say,—"I wanted to know the truth, and that's what he told me." He said that McKissic was not "hazy" or drunk, that Officer Moriarity was present but did not question him at that time and made no suggestions.

When Officers Moriarity and O'Brien testified there were no objections or requests with respect to their direct examinations. When asked what he (McKissic) said, Moriarity testified: "At first he denied being implicated in the robbery, and then after questioning, telling him we had information that he was implicated in it, he admitted it, and we took him to the City Jail, where we confronted him with Andrew Moore (the lookout), Robert Williams (with the gun) and Trosper Reese (who took the $32). He identified all three subjects as being his accomplices in the robbery of Martin's Liquor Store. And at that time Andrew Moore identified him as being his accomplice in the robbery of Martin's Liquor Store." These officers were cross-examined as to McKissic's arrest; he was arrested on the night of January 14 by officers other than Moriarity and O'Brien, but he was not examined by the officers until the next morning at 10:45. There were no threats, they talked to him about

20 minutes, told him what they had and took him to the city jail "for purposes of identification." Grenzer's conversation with McKissic was before they took him to the jail. When McKissic testified he told about entering the store and buying the wine, he related the events of the robbery in which he said he was merely an innocent bystander. He said that he did not "confess this crime" to anyone and did not get $8 of the proceeds of the robbery. He did not claim that he was mistreated or even that he was unfairly interrogated by the police, he simply denied that he had anything to do with the robbery and denied admitting to any one that he had.

▮▮ If a confession is involuntary as a matter of law the fact may be declared by this court. State v. Bradford, Mo., 262 S.W.2d 584, 586; State v. Ramsey, 355 Mo. 720, 727, 197 S.W.2d 949, 954. The mere fact, however, that the appellant was in custody and was questioned by Grenzer and police officers does not render his statements involuntary (State v. Pillow, Mo., 169 S.W.2d 414, 417), and these two facts are the only possible circumstances upon this record. There is no evidence that he was drunk, or that he was mistreated or overreached in any manner, even the appellant did not claim any kind of mistreatment or imposition. Thus in the circumstances of this record there is no basis or foundation for the claim that his admissions or confessions were involuntary and that therefore their admission in evidence infringed his rights "in contravention to the Fourteenth Amendment to the Constitution of the United States." State v. Ramsey, supra; State v. Statler, Mo., 331 S.W.2d 526.

There are four assignments of error directed to the conduct of the prosecuting attorney: (1) that prior to and during the trial it was apparent, by reason of their contacts in prior years, that the state's attorney was motivated by personal animosity and vindictiveness, (2) that the court erred in overruling defendant's objections to the prosecuting attorney's re-calling the defendant after the case had been closed for further cross-examination, (3) that the court erred in refusing to restrict the scope of the cross-examination to matters testified to by the defendant on his direct examination, and (4) that the court erred in refusing to declare a mistrial when the state's attorney made reference to the defendant's financial condition and need for money.

▮ As to the first assignment, there is no necessity here for a homily on the duty and conduct of a state's attorney, in general his obligations in prosecuting criminal offenses are set forth in 23A C.J.S. Criminal Law § 1081, p. 78. Aside from the lack of detailed specification and application in the first assignment (Sup.Ct. Rule 27.20), the record does not plainly support the general assertion of personal animosity or of vindictiveness on the part of the assistant prosecuting attorney. There may have been an excess of zeal in some respects, but the mere fact of their prior encounters and contacts, particularly in the prosecutor's official capacity, does not establish personal animosity or an infringement of the prosecutor's obligations. 24 C.J.S. Criminal Law §§ 1441–1442, pp. 55–68. So also as to his recalling the defendant for further cross-examination after the close of the case, the assignment is lacking in specificity, alleging only that information similar to that previously brought out was further developed and had an "unduly serious impact upon the minds of the jurors," especially since the incident was just prior to the closing arguments. Since it is not rebuttal evidence and violates the usual order of trial (V.A.M.S., Sec. 546.070(3)), it may be inadvisable for the state to recall a defendant for the sole purpose of further cross-examination after the case has been closed, but, since he was a witness (V.A.M.S., Sec. 546.260) that too is a matter within the discretion of the trial court. 15 L.R.A. 669, 674; 2 Ann.Cas. 248; 58 Am.Jur. (Witnesses), Sec. 561, p. 313; 23 C.J.S. Criminal Law § 1056b, note 42(2), p. 1237; State v. Kennade, 121 Mo. 405,

26 S.W. 347. In connection with the court's discretion the problem arises upon the nature and character of the questions asked rather than upon the mere fact of being recalled. There was one improper and uncalled for statement by the prosecutor ("He said he didn't know him (Robert Williams) and now he said he did. I impeached him."), but there is no assignment in the motion relating to the character of the examination.

As to the scope of a defendant's cross-examination, these are the relevant statutes: "(E)xcept where a defendant in a criminal case is testifying in his own behalf," a party to any cause, civil or criminal, is entitled to cross-examine any witness (V.A.M.S., Sec. 491.070), the limitation is that a defendant testifying on his own behalf "shall be liable to cross-examination, *as to any matter referred to in his examination in chief,* and may be contradicted and impeached as any other witness in the case." V.A.M.S., Sec. 546.260. It is not necessary to a disposition of this appeal to collect and analyze the cases or to consider the history and rationale of the statutes (State v. Pierson, 331 Mo. 636, 56 S.W.2d 120; State v. Scown, Mo., 312 S.W.2d 782, 786–787), it is sufficient to say that when a defendant exercises his right to testify and enters a "sweeping denial" to the charge, the state is not confined to a mere categorical review or reiteration of the matters covered on direct examination but may cross-examine as to "all matters within the purview of the direct examination." State v. Scown, supra; State v. Brown, Mo., 312 S.W.2d 818. The appellant asserts that here the state's attorney "flagrantly went outside of those areas" covered by the direct examination "for the purpose of prejudicing the defendant's case in the eyes of the jury." To illustrate, it is said that the cross-examiner "delved into" his past and present employment record, his friendships and personal relations, sources of funds and income and arrests for which there were no convictions.

In his direct examination the appellant testified to his presence in the liquor store for the purpose of purchasing the wine. In substance he described the robbery as Grenzer described it, and he told about talking to the police. But, as indicated, he said that he did not confess to anyone that he was a participant in the robbery. He testified to his prior burglary conviction in 1957 in which he was sentenced to two and one-half years' imprisonment but was placed on probation. Then he said that he fulfilled his probation "in good form." In the first place, he was subject to being impeached by proof of prior convictions as any other witness. V. A.M.S., Sec. 546.260. In this connection, it is not, as a general rule, permissible for the state to inquire about or show mere arrests, charges or indictments. State v. Rumfelt, Mo., 258 S.W.2d 619; State v. Wigger, 196 Mo. 90, 98–100, 93 S.W. 390, 392. The only question along this line was "Weren't you arrested for parole violation in 1958?" This, obviously, related to his direct examination and his claim that he had observed his parole in "good form." There was an objection to this question but, the court, evidently, said, "Confine it to the convictions," and the subject was not pursued. In addition to the burglary, he was asked and admitted that he had been convicted of malicious destruction of property (V.A.M.S., Sec. 560.395) and nonsupport of his children (V.A.M.S., Sec. 559.350), for which he had received jail sentences of thirty days and six months. But in Missouri, unlike some other jurisdictions (Lawrence v. United States, 8 Cir., 18 F. 2d 407), convictions of misdemeanors, as well as of felonies, may be shown as affecting credibility. State v. Bagby, 338 Mo. 951, 962–963, 93 S.W.2d 241, 247; State v. Blitz, 171 Mo. 530, 71 S.W. 1027.

It is not necessary to the preservation of a defendant's rights under the statute that he object to every question asked on cross-examination (State v. Nicholson, 337 Mo. 998, 87 S.W.2d 425),

but the inquiries must be clearly outside the scope of the direct examination and they must constitute more than mere "technical violation" (State v. Mastin, 277 Mo. 495, 211 S.W. 15), and they must relate to some material matter manifestly prejudicial to substantial rights. State v. Pierson, supra; State v. Barrie, Mo., 199 S. W. 136. McKissic was asked where and how he had recently been employed and how much money he had earned. He said that he had done some decorating for which he had received $8 a day for three days' work. But this question related to his direct examination and his ability to purchase wine almost daily. He was asked whether one of the robbers had a gun, particularly which one, but that too related to his direct examination and his description of the robbery. He said that he was personally acquainted with Reese, knew Moore by sight, but he could not say which of the robbers was Williams. There was one question ("Are you married? A. I am divorced.") that does not seem particularly relevant, he had not testified to any matter that would call for his impeachment on that score. Compare: State v. Myers, 221 Mo. 598, 612, 121 S.W. 131, 134; State v. Ferguson, Mo., 183 S.W. 336; State v. Krauss, Mo., 177 S.W.2d 699. While the question may have been a "technical violation" of the statute, it was not so manifestly inflammatory as to compel the granting of a new trial. State v. Cooley, Mo., 221 S.W.2d 480, 486.

The appellant was not represented by counsel upon this appeal and for that reason questions not required to be presented in a motion for a new trial have also been examined and the transcript shows compliance with all matters necessary to be considered by the court upon the record before it. Sup.Ct.Rule 28.02. Accordingly, the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All of the Judges concur.