**STATE of Missouri, Respondent,**

**v.**

**Robert Lee MOSER, Appellant.**

**No. 52815.**

Supreme Court of Missouri,
Division No. 1.

Feb. 12, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, William O. Sawyers, Jr., Special Asst. Atty. Gen., St. Joseph, for respondent.

Robert A. McIlrath, Flat River, for appellant.

HIGGINS, Commissioner.

Appellant, charged by information with the felony of stealing property having a value in excess of $50, was convicted by a jury which assessed his punishment at 6-months' imprisonment in the county jail. Sections 560.156 and 560.161, V.A.M.S. Sentence and judgment were rendered accordingly.

Appellant does not complain of the sufficiency of the evidence and a brief statement demonstrates that the state made a case.

Clyde Henry Klob, a policeman of the City of Fredericktown, Madison County, Missouri, was on duty from 11:00 p. m., Saturday, June 11, 1966, to 7:00 a. m., Sunday, June 12, 1966. Sometime after 11:00 p. m. he discovered several rolls of woven wire fencing scattered in the alley behind Thal's Locker Plant. "I drove around looking to see if I could see anyone and I went out West Main here and I seen a bunch of fellows over in front of Miner's Lumber Company across from the VFW * * * Bob Moser, Tiny Gregory, J. Stephens,

Larry Cooper, Gene Kemp, and two or three others that I did not recognize." Later, he saw "an automobile going out of the alley * * * there was some wire in the back end of it." The car went over a hump and three rolls of wire fell from the trunk of the car. He stopped the car and found the driver to be Bob Moser, the appellant. He was accompanied by Gene Kemp. The car, a 1957 Chevrolet, belonged to Larry Gregory. Appellant told Officer Klob he would take the wire back where he got it but, although Officer Klob returned to Thal's Locker Plant, he did not again see appellant. He reported these incidents to N. F. Whitener, Sheriff of Madison County.

Wilbur George Oberman observed the car driven by appellant as it came from the alley behind Thal's Locker Plant loaded with wire. He also saw that car as it was followed by Officer Klob. This occurred between 5:30 and 6:00 on the morning of June 12, 1966.

Sheriff Whitener saw appellant later on June 12, 1966, at Tiny Gregory's house, five miles south of Fredericktown. "There was some wire laying by Tiny's house and Tiny and Bob Moser and Tiny's wife was standing out to the side of the house. * * * there were six rolls of wire laying there" between Tiny Gregory's 1957 Chevrolet and the house. At the sheriff's direction appellant loaded three 20-rod rolls of 39-inch woven wire into the car and drove into town where he unloaded it at Thal's dock. The sheriff and appellant went from there to the jail.

C. W. Thal had stored wire on the "alley side" of his premises in Fredericktown for fifteen years. Each roll of 39-inch wire cost $19.75. On June 11, 1966, he had ten or fifteen such rolls of wire on his premises.

Larry Gale (Tiny) Gregory lived about five miles from Fredericktown. On June 11–12, 1966, he had been with Bob Moser,

Gene Kemp, and J. Stephens at the VFW where at least he and Bob Moser had had something to drink. They left the VFW when it closed at 1:30 a. m. They left the VFW in Gene Kemp's car and drove around for awhile. Later they loaded four rolls of wire into the Kemp car and Gene Kemp drove it to Tiny's house. Jay Stephens followed them in his car and, while they were all at Tiny's house, Tiny joined Jay and they went to eat breakfast. Before they left, Bob Moser borrowed Tiny's 1957 Chevrolet. When Tiny returned to his home there were more than four rolls of wire on his premises—there were "approximately ten rolls" of wire.

Gene Kemp told how he, Bob Moser, and Tiny, beginning about 2:00 a. m., took one load of wire "out to Tiny's" in his car and how he and Bob Moser, using Tiny's car, took a second load to Tiny's. They were on their third trip with a load of wire when stopped by Officer Klob.

Robert Lee Moser testified in his own behalf and stated that he and Gene Kemp took one load of four rolls of wire to Tiny Gregory's house in Gene's car. He also admitted taking a second load of four or five rolls, using Tiny's car, and being stopped by Officer Klob while in the process of taking a third load of five rolls of wire.

Both Gene Kemp and Robert Lee Moser denied they were stealing, their theory being that they "were taking care of this wire until (they) found the rightful owner."

Appellant contends the court erred in allowing the prosecuting attorney to ask the defendant and Gene Kemp, also charged with stealing this wire, "questions that had not been gone into in the direct examination or in no way referred to in direct examination."

■ The objection at trial to the cross-examination of Gene Kemp was "It's immaterial; it doesn't prove or disprove any-

thing," and appellant is not entitled to review on a different theory.

During the cross-examination of the defendant, the prosecuting attorney asked:

"Q Mr. Moser, you had seen Officer Klob earlier that evening, had you? A Yes, sir. Q He had mentioned to you and a couple of fellas you were with out here in front of the VFW—

"MR. McILRATH: Wait a minute, don't answer yet. Go ahead.

"MR. GRAHAM: He had told you and a couple of fellas you were with out in front of the VFW that this wire was down there?

"MR. McILRATH: Now, wait a minute. I'm going to object to that; I didn't go into that on direct examination. THE COURT: Overruled.

"MR. GRAHAM: You may answer. A Yes, he came by.

"MR. McILRATH: I want to ask that answer be stricken and the Jury told to disregard it. This is the Defendant. It wasn't gone into on direct examination. THE COURT: Overruled.

"MR. McILRATH: I want to ask the Jury be discharged and a mistrial declared. THE COURT: Request is denied. MR. GRAHAM: You can answer that. MR. McILRATH: He's already answered. A I already answered. MR. GRAHAM: What was your answer?

"MR. McILRATH: I want to object to that; it's repetitious. He answered it. THE COURT: Overruled. Now, let's proceed in a more orderly fashion. What was your answer? A Yes, sir; he came by and told us.

"MR. McILRATH: I want to again ask that that be stricken,—I have to keep my record straight—and the Jury be discharged. It was not part of the direct ex-

amination and this is the Defendant. THE COURT: Denied. * * *

"Q Had you been drinking together at the VFW? A What? MR. McILRATH: Now, wait a minute. Please don't answer—A No, sir.

"MR. McILRATH:—when I object. That wasn't gone into on direct examination. THE COURT: He's already answered. * * * MR. McILRATH: I want to ask the answer be stricken and the Jury told to disregard it. THE COURT: Denied. MR. GRAHAM: Do you know—MR. McILRATH: Wait a minute, please, till I finish this record. I want to ask the Jury be discharged and a mistrial declared. THE COURT: Denied."

Section 546.260, V.A.M.S., provides that a defendant who testifies in his own behalf "shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case * * *;" and under this section "the state is not confined to a 'categorical review' of the matters covered or stated in the direct examination of a defendant, but that the cross-examination may cover all matters within the fair purview of the direct examination. * * * If the defendant in chief in a general way refers to a subject, he may be examined in detail as to that subject." State v. Scown, Mo., 312 S.W.2d 782, 786–787[2].

■ There was evidence that defendant, Tiny, Jay Stephens, and Gene Kemp were at or near the VFW when Officer Klob came along and questioned them about tires and wire scattered over the alley. Defendant in his own behalf also testified as to the scattered wire. The inference attempted was that someone else had scattered the wire and that defendant and Kemp merely collected it for safekeeping after they were confronted by Officer Klob while standing outside the VFW. Under such circumstances the prosecutor's questions were within the purview of detailed

examination of matters covered generally by the direct examination.

 Assuming, arguendo, that the matters upon which defendant and his witness were questioned were not strictly within the scope of their direct examination, cross-examination as to matters not referred to in chief is not grounds for reversal unless material or prejudicial to accused's substantial rights. State v. Pierson, 331 Mo. 636, 56 S.W.2d 120, 123[5].

Appellant himself removes any vestige of materiality from the questions by his statement that any evidence "with regard to drinking or the VFW Hall would certainly be collateral, irrelevant, and immaterial at best"; and his arguments that they were prejudicial because "Madison County is a notoriously dry county, and questions about drinking could have only been propounded by the Prosecuting Attorney with the intention of prejudicing the Jury against the Defendant. * * * and (that) the VFW Hall is considered by many citizens as the local distributor for OLD LUCIFER, all to the detriment of those who might have repaired thereto for any period no matter how short, or any purpose no matter how noble" are in no way supported by the record.

 Review required by Criminal Rules 28.02 and 28.08, V.A.M.R., shows that the information is in proper form and sufficient; defendant was accorded a jury trial upon his plea of not guilty; the verdict is proper and responsive; the punishment is within legal limits; the motion for new trial was considered; and allocution was granted.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.