**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Antonia RICE, Defendant-Appellant.**

**No. 35767.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

Feb. 11, 1975.

**574**

Walter Sheata, Asst. Public Defender, 22nd Judicial Circuit, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen. of Missouri, Donald R. Bird, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

NORWIN D. HOUSER, Special Judge.

On this appeal Antonia Rice, convicted of first degree murder and sentenced to life imprisonment, seeks reversal of the judgment on the basis of allegedly improper cross-examination of defendant and improper admission of evidence.

Antonia Rice and her husband Joel went to the home of Jeanette Johnson, Antonia's sister, to see if Antonia had left any clothes there and to pick up some phonograph records. Michael Collor, the victim of the killing, was present. He stated that one Yancey had the records and that they were broken. Joel Rice, agitated by this, said to Collor, "Why would you do something like that?," then to his wife Joel Rice said, "I'm not going to let them mess over you like that." Antonia and Joel Rice left, driving away in the latter's automo-bile, and proceeded to the residence of Joel Rice's Aunt Hattie. After fifteen minutes at Aunt Hattie's house the three of them drove to the west end of the city, where they picked up three men including Chester Ward, and all but Aunt Hattie drove on to the home of Jeanette Johnson. All five got out of the car. Antonia, Joel Rice and Chester Ward went to the front door and knocked. When Jeanette Johnson opened the door either Antonia or Joel Rice asked if Mr. Collor would come to the door. When Collor appeared at the door someone shouted "Shoot him," whereupon Chester Ward pulled a gun from his jacket and shot Collor, inflicting a mortal wound. According to the State's theory Antonia was privy to the whole affair and both she and Joel Rice shouted "Shoot him." According to Antonia, who took the stand in her own defense, she had no previous knowledge of any plan to shoot Collor and was entirely innocent. She testified that after the shooting she ran. On cross-examination, asked where she ran, she answered that she ran to her husband's car and that "all five" got into the car. At that point counsel for Antonia objected "to going beyond the scope of the direct examination." The assistant circuit attorney claimed the right to "go into her statement to the police which is very contrary to what she's stating now." The court overruled the objection and the State proceeded to develop on further cross-examination that they all drove to Aunt Hattie's house; that Antonia then took a cab to Aunt Bea's house, picked up some clothes, and took a cab back to Aunt Hattie's house, where it was learned that Collor had died; that she wanted to turn herself in but Aunt Hattie and Chester Ward would not permit her to leave the Rice house; that they threatened to kill her if she told "who did it"; that they took her down the street to another house and had her "watched." On redirect examination Antonia's counsel examined her with respect to the events which occurred after the shooting, eliciting that after Collor's death was reported "they" took her to Michael Rice's house "to make sure

[she] wouldn't go nowhere," and that she was kept there until the following Monday morning, when Hattie Rice brought Antonia to the police station. There she gave a voluntary statement as to the circumstances surrounding the shooting. On re-cross-examination Antonia stated that the only reason she did not go to the police earlier was that she was being held and had no way to get to a telephone. Antonia further denied that on recross-examination she had a telephone conversation with an aunt with reference to sending for some boots, in which the aunt said that there were detectives at the aunt's house. Antonia denied cautioning her aunt not to tell the detectives that she had called. At that point, in rebuttal, Officer William Jones testified that he went to Aunt Annie Mc-Gloson's house trying to locate Antonia Rice; that he had permission to search the house; that while conducting the search the telephone rang; that he picked up the receiver on an upstairs extension and heard the following conversation: "Hello Annie, this is Tony. I don't have any shoes and I'm sending my aunt over to pick up my silver boots." A voice replied, "Tony, do you know the detectives are here looking for you now?" The first voice replied, "Oh no, don't tell them I've called."

█ There was no abuse of discretion in permitting cross-examination of Antonia with respect to what happened following the shooting for the reason that it was within the scope of her direct examination, in which she was asked what she did when the gun was "pulled out," to which she answered that she was shocked and that she ran. "If in direct examination the defendant refers in a general way to a subject he may then be cross-examined in detail as to that subject." State v. Dalton, 433 S.W.2d 562, 564 [3] (Mo.1968). It was fairly within the scope of cross-examination to ascertain why she ran, where she ran and what she did in the course of her run. Authority for cross-examination of an accused as to running and hiding, even when those subjects are not referred to on direct examination, is found in State v. Grant, 394 S.W. 2d 285, 288 [3, 5] (Mo.1965). Exploration of the subjects of fleeing and concealment were of particular pertinence in this case for whatever light they might shed on Antonia's credibility, in view of her flat denial of any knowledge of a plot to kill or complicity in the shooting of the victim. In any event, Antonia's testimony on cross-examination that she was detained against her will by her relatives, threatened, and thus prevented for a time from giving herself up to the police, was generally favorable to her. Error may not be predicated upon cross-examination of the accused not strictly within the scope of direct examination unless it is prejudicial to the substantial rights of accused. State v. Moser, 423 S.W.2d 804, 807 [3] (Mo.1968). With the exception of the evidence pertaining to the telephone call and her testimony that threats were made on her life if she went to the police, the remainder of the evidence adduced by the cross-examination was irrelevant and immaterial, as appellant in terms admits in her brief.

█ The evidence touching the telephone conversation was properly admitted. Antonia's testimony on cross-examination that she was an unwilling victim of circumstances preventing her from promptly reporting to the police entitled the State to show the contrary. If the jury believed the officer who claimed to have overheard the telephone conversation, and if the jury determined that the person speaking on the other end of the line was Antonia, this would seriously affect if not completely destroy Antonia's explanation of her disappearance and failure to give herself up to the police promptly. Identification of a person calling on the telephone "may be shown by circumstances." State v. Steele, 445 S.W.2d 636, 639 [2] (Mo.1969). The following is sufficient circumstantial evidence from which the jury could properly infer that the caller was Antonia: The officer, searching for Antonia, went to the house of the latter's aunt. While there the

telephone rang. The officer, who had permission from the aunt to search the house, listened in on an upstairs extension phone. The voice on the other end of the line was that of a negro female. Antonia is a negro female. The caller identified herself as "Tony." Tony is a nickname for Antonia. The caller inquired about certain footwear she had left at the aunt's house. Antonia testified that she had left footwear at her aunt's house. The aunt informed the caller that Antonia was being sought by police and that a detective was at the house at the time. The caller directed the aunt not to tell the officer that she had called. Antonia remained *in absentia* until brought to the police station by another relative.

The officer did not have permission to answer the telephone or listen in on incoming calls, but appellant makes no point of this, her contention being only that the telephone conversation should not have been admitted in evidence because it "was never connected to the defendant." It was sufficiently connected.

No error appearing the judgment is affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.