**STATE of Missouri, Respondent,**

v.

**Victor J. LEONARD, Appellant.**

**No. 40108.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 26, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 17, 1980.

Application to Transfer Denied
Nov. 12, 1980.

James F. Booth, Clayton, for appellant.

John Ashcroft, Atty. Gen., Brenda Farr Engel, Asst. Atty. Gen., Gordon L. Ankney, Jefferson City, for respondent.

STEPHAN, Presiding Judge.

Defendant Victor Leonard was convicted by a jury of forcible rape and armed criminal action and was sentenced by the court as a second offender to concurrent terms of six and three years, respectively. We affirm the conviction of forcible rape and reverse that of armed criminal action.

Because defendant does not challenge the sufficiency of the evidence, a brief summary of the facts suffices. The twenty–four–year–old prosecutrix testified that she was visiting a friend, Diane Welch, on March 17, 1977, when defendant's brother, Terry Leonard, asked her to accompany him to see his new apartment. The two walked the short distance to the apartment, where they met defendant. The prosecutrix had known the brothers for approximately ten years. At the apartment, the three drank a few beers and engaged in an amicable game of cards. Defendant all the while kept a sawed–off shotgun, in the open position, on the table in front of him. After an hour or so, defendant suddenly closed the gun, pointed it at the prosecutrix and told her she could not leave yet because not many women left the apartment "without having sex." The prosecutrix testified that she was frightened and wanted to leave, but stayed when defendant put the gun down and convinced her that he was only joking. A short time later, defendant asked the prosecutrix to follow him into the bedroom, ostensibly to view some pictures on the wall. When she complied, defendant repeated his declaration that she could not

leave without engaging in sex with him. Terry Leonard entered the room with the shotgun, placed it on the bed and began to help defendant remove the prosecutrix's clothing. She testified that she resisted their efforts until defendant announced that he was "tired of wrestling" with her and started for the gun on the bed. She was thereafter raped once by defendant, twice by Terry Leonard and once by a Kenneth Brown, who arrived at the apartment after the rapes had begun. The gun was at all times either under control of one of the Leonard brothers or on the bed out of the prosecutrix's reach. She was thereafter allowed to leave.

Defendant's first assignment of error involves a claimed inconsistency between the testimony of prosecutrix before the grand jury and at trial. On cross–examination at trial, the prosecutrix testified that defendant had told her that she could not leave the apartment. Defense counsel then produced a copy of the prosecutrix's grand jury testimony, caused the entire transcript to be marked for identification as a defendant's exhibit, and elicited that she had not told the grand jury that defendant had so threatened her. Counsel asked the prosecutrix to explain that omission in her grand jury testimony. He further queried whether, at the time she had testified before the grand jury, the prosecutrix believed it to be an important point that defendant had ordered her to stay in the apartment. The prosecutor objected to this inquiry on the ground that the prosecutrix's assessment of the evidentiary importance of that part of her account was irrelevant. The court sustained the objection. The court made it clear, however, that it regarded the inquiry into the discrepancy relevant as it reflected on the prosecutrix's credibility. The court stated that it would not prevent defense counsel from developing the *fact* that the prosecutrix had had the opportunity to tell her full story to the grand jury and had failed to relate one significant aspect of it at that time. The court simply ruled that inquiry into the prosecutrix's reasons for not giving that testimony to the grand jury was argumentative. That ruling forms the

basis for defendant's first assignment of error.

■ The trial court is vested with considerable discretion in controlling the scope and extent of cross–examination. *State v. Thomas*, 552 S.W.2d 63, 65 (Mo.App.1977); *State v. Platt*, 525 S.W.2d 637, 641 (Mo.App. 1975). "[I]f reasonable men can differ about the propriety of the action taken by the trial court, then the trial court did not abuse its discretion." *Kasper v. Helfrich*, 421 S.W.2d 66, 69 (Mo.App.1967). See also *State v. Edmonds*, 468 S.W.2d 685, 688 (Mo. App.1971). A discretionary ruling is presumed to be correct and the burden of demonstrating abuse is therefore cast on appellant. Id.

■ Defendant cites three cases, *State v. Adams*, 380 S.W.2d 362 (Mo.1964), *State v. Moore*, 80 S.W.2d 128 (Mo.1935), and *State v. Turner*, 246 Mo. 598, 152 S.W. 313 (1912), in support of the proposition that the court unduly restricted his inquiry on cross–examination into the "state of mind" of the prosecutrix. His reliance on those cases is misplaced. All three cases involved cross–examination into the state of mind of a victim or a defendant *at the time the crime was allegedly committed*, when such state of mind was arguably relevant in proving either the charge against the defendant, the defendant's claim of self–defense or defendant's right to an instruction on a lesser offense. We do not find them instructive in the current situation in which defendant sought to elicit the witness's reasons for omitting certain testimony before the grand jury.

As noted, the court in making the instant ruling permitted defendant to establish the existence of the testimonial discrepancy and the circumstances surrounding it. We do not agree with defendant's contention that the attempted inquiry was necessary (or even particularly helpful) in raising the inference that the prosecutrix's later testimony regarding defendant's threat was a fabrication. Her silence before the grand jury on the issue of whether defendant refused to permit her to leave was clearly

placed before the trial jury. Under the circumstances, we agree with the court's statement that speculation as to the prosecutrix's motives in testifying was a matter for closing argument of counsel, and that the question was argumentative. We find no abuse of discretion in the court's ruling. See *State v. Thomas*, 552 S.W.2d 63, 64–65 (Mo.App.1977); *State v. Taggert*, 443 S.W.2d 168, 174 (Mo.1969).

Defendant next contends that the trial court erred in denying his motion for a mistrial when an arresting officer was allegedly permitted to comment on defendant's failure to make a statement to the police at the time of the arrest. Shortly after the rape occurred, the police were notified of the incident and were directed to the Leonard apartment by the prosecutrix. They there encountered two women and four men, including defendant and Terry Leonard. Terry Leonard was placed under arrest at the apartment; defendant identified himself to the police as "Joseph Goodrich" and was not arrested at that time. However, at the request of the police, defendant and the other occupants of the apartment accompanied the officers to the station to aid in the investigation of the incident. Defendant was apparently identified there by the prosecutrix as one of her assailants and was placed under arrest. He did not tell the police his true identity, but apparently inadvertently signed the name "Victor J. Leonard" on one of the forms he signed during the booking process.

■ At trial, the prosecutor attempted to establish the circumstances surrounding defendant's arrest and the discovery of defendant's true identity at the station house.[1] During direct examination of one of the arresting officers, the following exchange occurred:

"Q And did the individual who identified himself as Joseph Goodrich–who you identified as Victor Leonard–did he go to the station house with you?

A Yes, sir.

Q With one of the officers?

A Yes, sir.

Q And at the station house was he placed under arrest at any time?

A Yes, he was.

Q And when was that?

A After identified by–

MR. BOOTH: Objection, hearsay, Judge."

The objection was sustained and the jury instructed to disregard the officer's last words.

"Q Did he ever tell you his name was Victor Leonard?

A No, sir.

MR. BOOTH: Objection, leading, Judge.

THE COURT: Well, we're getting ourselves back into some problems. He was arrested, you said, about eight–thirty?

A No, after eight–thirty, sir.

THE COURT: Did you take a statement from him after he was arrested?

A Yes, sir.

THE COURT: Did you give him his constitutional rights?

A Sir, the statement I obtained was during the booking process to gain his pedigree information.

THE COURT: You didn't take a statement from him?

A No, sir, an actual statement was never obtained."

Defendant objected, contending that the final exchange between the court and the witness constituted a violation of his constitutional right to remain silent following his arrest. U.S.Const. Amend. V and XIV; Mo.Const. Art. 1, § 19.

■ It is, of course, impermissible for the state to comment in argument or introduce evidence regarding a defendant's post–arrest failure to volunteer an exculpatory statement. *State v. Roth*, 549 S.W.2d 652 (Mo.App.1977); *State v. Benfield*, 522 S.W.2d 830, 834–835 (Mo.App.1975). How-

---

1. A criminal defendant's furnishing of a false name to arresting officers is a permissible area of inquiry at trial. *State v. Duncan*, 499 S.W.2d 476, 478 (Mo.1973); *State v. Lindner*, 282 S.W.2d 547, 552 (Mo.1955). It is admissible as tending to show a consciousness of guilt. *State v. Jones*, 575 S.W.2d 899, 900–901 (Mo. App.1978).

ever, even under this rather broad application of a defendant's privilege against self–incrimination and its corollary–the right not to have his silence used against him–reversal is not required in this case. The ultimate test of whether the privilege was denied or the right violated is whether the challenged remarks were reasonably apt to have directed the jury's attention to the fact that the defendant refused to speak on his behalf. *Eichelberger v. State*, 524 S.W.2d 890, 894 (Mo.App.1975); *State v. Shields*, 391 S.W.2d 909, 913 (Mo.1965). The remarks must therefore be viewed in context. *Eichelberger*, supra, 894.

In this case the court questioned the witness: "You didn't take a statement from him?" The answer: "No, sir, an actual statement was never obtained." The wording of the response leaves open to speculation the reason for the officers' failure to obtain a statement from defendant. However, we believe that the context in which the remark was made, the context of both the immediate question and the general line of inquiry, would be far more likely to cause the jury to view the remark as an indication that the police made no further attempt to question defendant at that time rather than an indication that defendant was questioned yet elected to remain silent. The response certainly did not highlight defendant's failure to offer an exculpatory version of the incident at the time of his arrest. We do not believe that it can be said that the remark was reasonably likely to direct the jury's attention to that failure and accordingly rule the point against defendant.

Defendant's next assignment of error concerns the prosecutor's use, during closing argument, of the grand jury testimony of defense witness Diane Welch despite the fact that the transcript of that testimony had not been received into evidence, although, as noted, it had originally been produced and marked by the defendant.

During cross-examination of Ms. Welch, the prosecutor had attempted to impeach the witness by quoting a portion of her grand jury testimony which was inconsistent with her trial testimony and by questioning her concerning that inconsistency.[2] During closing argument, the prosecutor, apparently with a copy of the transcript in hand, made reference to Ms. Welch's grand jury testimony, closely paraphrasing the pertinent question and response. Defendant now contends that the prosecutor's "physically demonstrative" use of the transcript during closing argument "suggested to the jury that the prosecutor was in possession of information not in evidence confirming the guilt of Defendant."

Defendant argues that reversal is required when the prosecutor implies during argument that he is possessed of incriminating information in addition to the admitted evidence. Although we do not disagree with this general principle, we believe that in this case defendant's argument is answered by *State v. Baker*, 548 S.W.2d 572 (Mo.App.1975). There, the appellant similarly contended that the trial court erred in allowing the prosecutor during closing argument to read from a document not introduced into evidence. The court there held:

"The difficulty in appellant's contention is that although not offered and received as documentary evidence, the subject matter in question was read in evidence prior to the State's argument and comment thereon was therefore appropriate." Id., 573.

In this case, the prosecutor read or paraphrased during argument solely the brief portion of the grand jury testimony which he had quoted to Ms. Welch during cross–examination. His comments were restricted to that portion. We therefore regard *Baker* as dispositive of this point.

Defendant attempts to distinguish *Baker* on the ground that in that case the

---

2. The "inconsistency" grew out of the fact that, at the trial, Ms. Welch testified that when the prosecutrix returned from defendant's apartment, her eyes were red, she "looked like she had been crying or maybe she could be high."

The grand jury transcript indicated that when Ms. Welch was asked about the condition of the prosecutrix upon her return, Ms. Welch stated only that "She looked like she had been crying."

testimony in question had been read into evidence without objection. In this case, defense counsel objected to the reading of Ms. Welch's grand jury testimony during cross–examination, on the ground that an inadequate foundation had been laid for its admission. (Ms. Welch in fact disputed the accuracy of the transcript.) However, inasmuch as defendant did not include that objection in his motion for new trial, the evidence is deemed properly admitted at the time of the cross–examination of Ms. Welch. We therefore reject defendant's attempt to distinguish this case from *Baker.*

■ To the extent that defendant is here contending that the prosecutor's "physically demonstrative" use of the transcript during argument raised an inference that it contained incriminating information over and above the Welch testimony, we note again that the prosecutor's comments were restricted to the one question and answer he had previously quoted. There is no indication in the record what the "physically demonstrative" handling of the transcript consisted of, and we find it difficult to imagine how any such handling could in and of itself raise the impermissible inference.

The trial court is vested with considerable discretion in controlling argument to the jury. *State v. Westmoreland,* 541 S.W.2d 769, 771 (Mo.App.1976). We find no abuse of that discretion here.

■ Defendant next contends that the trial court erred in overruling his objection to a comment made by the court at the bench to defense counsel. Defendant argues that he was prejudiced by the remark because it suggested to the jury that defense counsel was conducting the trial in an unfair manner. We need not detail the substance of the comment because the argument rests first on the premise that the comment, though made in the course of a conference at the bench, was in fact audible to the jury. When faced with defense counsel's objection to his remark, the trial judge stated several times for the record that his voice could not be heard by the jury at the time the remark was made. Though

the judge's own assessment of his vocal volume is perhaps not conclusive on the issue, defendant made no attempt to offer countervailing evidence at any stage of the proceedings. We are faced then with nothing but defendant's bare allegation that the court's comment could be overheard by the jury. "This court is precluded from consideration on review of any facts not set forth in the approved transcript ... To do so would involve the rankest kind of judicial speculation and conjecture." *State v. Hatten,* 561 S.W.2d 706, 713 (Mo.App.1978). The point is ruled against defendant.

Defendant alleges further error in the prosecutor's closing argument. During his closing argument defense counsel had thus discussed a photographic exhibit which depicted defendant's bed, with a pair of earrings lying on the headboard shelf:

"Apparently a lady has left her earrings neatly set on the top of the bed.... Now, if this young lady were the victim of a sexual assault, why did she neatly set her earrings on the top of the bed, on the headboard of the bed? That's inconsistent with the evidence and with the State's theory of the case ... "

The following exchange then occurred during the argument of Prosecutor Ankney:

MR ANKNEY: He tells you those earrings are hers. Those are not her earrings. He never asked her that those earrings—

MR. BOOTH: I object. There is evidence that—

MR. ANKNEY: There is no evidence....

\* \* \* \* \* \*

THE COURT: Well, the jury will remember the evidence as to whether there was any evidence as to whether they were or were not her earrings. The jury will rely on their own recollection. The objection will be overruled; it's argument."

In fact the photograph had been admitted at trial with the normal foundation during cross–examination of an evidence technician, with specific testimony from the tech-

nician that the earrings were photographed where found; however no testimony whatsoever was adduced at trial regarding the ownership of the earrings.

Defendant therefore argues that the prosecutor was impermissibly allowed to imply to the jury that he possessed incriminating information in addition to the admitted evidence. Reading the statement in context, we conclude that a jury could not reasonably make such an inference from the challenged remarks. They were made as a comment on the evidence. However, inasmuch as the statement "Those are not her earrings" was a misstatement of the evidence (because of the total absence of evidence on that issue), we review the remarks on that basis.

■■■ We conclude that no prejudicial error was committed. The prosecutor may retaliate to an issue raised in defendant's closing argument even though the prosecutor's comment would otherwise be improper. *State v. Wood*, 596 S.W.2d 394 (Mo. banc 1980); *State v. Swenson*, 551 S.W.2d 917, 920 (Mo.App.1977); *State v. Johnson*, 485 S.W.2d 106, 114–115 (Mo.1972); *State v. Granberry*, 484 S.W.2d 295, 301 (Mo. banc 1972). In this case, defense counsel's comments implicitly attributed ownership of the earrings to the prosecutrix, though there was clearly no evidence to that effect nor evidence from which such an inference could reasonably be made. That argument "invited" the prosecutor's retaliatory remarks. Furthermore, though the prosecutor expressly denied the prosecutrix's ownership of the earrings, the thrust of his brief argument in this regard was simply that there was no evidence to support defense counsel's contrary assertion. The court was in a position to assess the impact of the statement on the jury. Though it overruled defendant's objection to the comment, the court did admonish the jurors to recall for themselves what the evidence was on the issue of ownership. We regard this as an adequate curative measure for any possible prejudice suffered by defendant as

a result of the comment in question. See *State v. Sykes*, 571 S.W.2d 456, 459 (Mo. App.1978). We again find no abuse of the court's broad discretion in controlling argument of counsel.

Lastly, defendant contends that the prosecution was improperly permitted, over objection, to cross–examine defendant on a subject beyond the scope of the direct examination. Specifically, during cross–examination, the prosecutor was permitted to question defendant about the shotgun recovered from the apartment and identified by the prosecutrix. The principal fact thus elicited was that defendant removed the gun from the kitchen table and placed it behind the stove when the police arrived. During his very brief direct examination, defendant had not mentioned the weapon. However, he did testify that the prosecutrix had been at the apartment with him and his brother on the afternoon in question; that he had briefly used the prosecutrix's car while she was there; that some money had been missing from the prosecutrix's purse when she left; and that he had not engaged in sexual intercourse with the prosecutrix.

■■■ Section 546.260, RSMo 1969, provides that a criminal defendant who chooses to testify at trial "shall be liable to cross–examination, as to any matter referred to in his examination in chief ..." Judicial interpretation of this section has produced the general principle that the state is not confined to a categorical review of the matters covered on direct; cross–examination may cover all matters within the "fair purview" of the direct examination. *State v. Williams*, 519 S.W.2d 576, 578 (Mo. App.1975); *State v. Kirk*, 510 S.W.2d 196, 198 (Mo.App.1974). In *State v. Scown*, 312 S.W.2d 782, 786 (Mo.1958) the court said, "It is probably impossible to lay down any definite rule" as to the allowable breadth of cross–examination under the above quoted statutory provision. We do not attempt to do so here for, if a breach of the provision is to be found, it is only by applying the most technical interpretation of its language.[3]

---

**3.** We do not imply that we find a violation of the statute here. By his testimony on direct

that he had no sexual contact with the prosecutrix on the day in question, defendant issued an

Minor "technical violations" of the statute do not constitute grounds for reversal. The impermissible inquiry must be "manifestly prejudicial to substantial rights" of the defendant. *State v. McKissic*, 358 S.W.2d 1, 6–7 (Mo.1962). See also *State v. Rice*, 519 S.W.2d 573, 575 (Mo.App.1975); *State v. Moser*, 423 S.W.2d 804, 807 (Mo.1968). The shotgun had already been admitted into evidence. It had been identified as the property of defendant. The prosecutor merely elicited that defendant was familiar with the exhibit and that he had hidden it in the kitchen when the investigating officers arrived. Nothing was elicited which was inconsistent with or weakened the defendant's version of the incident. Defendant has wholly failed to demonstrate how the claimed error prejudiced his substantial rights and our reading of the transcript does not persuade us that such was the result of the inquiry. Cf. *State v. Booth*, 515 S.W.2d 586, 590 (Mo.App.1974), *State v. McKissic*, supra, 6–7, *State v. Scown*, supra, 788, in which violations of § 546.260 were held to be erroneous, but not prejudicial. The point is ruled against defendant.

We review defendant's conviction for armed criminal action sua sponte in the light of the recent case *Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980), which was handed down after this case was taken under submission.[4] Rule 29.12(b). Under *Sours*, defendant's guarantee against double jeopardy was abrogated: the offense of armed criminal action includes the underlying felony; and punishment may not be imposed for both the greater and lesser included offenses. The conviction, for which defendant received a concurrent sentence of three years, cannot stand.

We therefore affirm defendant's conviction of forcible rape and reverse the conviction of armed criminal action. It is so ordered.

KELLY and STEWART, JJ., concur.

implicit denial of the state's entire theory of the case: that he had sexual intercourse with her, against her will and by placing her in fear by use of the shotgun. The law on this point is concisely articulated in *State v. Williams*, 519 S.W.2d 576, 578 (Mo.App.1975):

> "The defendant may not take the stand and by confining his answers to 'one or two well-prepared interrogatories sweep away the whole structure of the state's case, and then remain immune from a cross-examination on the issue thus tendered.' ... The 'matter' referred to in the examination in chief means the things he testifies about. If the defendant in his examination in chief refers to a subject in a general way, he may be examined in detail as to that subject. When he states a fact in relation to his actions, the state may inquire as to particular circumstances which would throw light on that fact. ... He may be cross-examined with reference to any subject matter concerning which he gave testimony." (Citations omitted.)

4. The *Sours* opinion was vacated by the Supreme Court of the United States and remanded for reconsideration in light of *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). *Missouri v. Sours*, 446 U.S. 962, 100 S.Ct. 2935, 65 L.Ed.2d 820 (1980). On August 18, 1980, the Supreme Court of Missouri filed another opinion reaffirming its position. *Sours v. Missouri*, 603 S.W.2d 592.