STATE of Missouri, Respondent,

v.

Royce E. GILREATH, Appellant.

No. WD 33076.

Missouri Court of Appeals,
Western District.

Oct. 5, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 30, 1982.

Richard Knight, James F. Ralls, Jr., Kansas City, for appellant.

John Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before MANFORD, P.J., and WASSERSTROM and KENNEDY, JJ.

MANFORD, Presiding Judge.

This direct appeal follows a judgment of conviction for forcible rape in violation of § 566.030 RSMo 1978, assault first degree in violation of § 565.050 RSMo 1978, and robbery first degree in violation of § 569.-020 RSMo 1978. The judgment is affirmed.

In summary, the trial court is charged with having committed error (1) in overruling appellant's motion for mistrial for improper comment by the prosecutor during opening statement, (2) in abuse of its discretion by denying appellant the opportunity to show or discover likely prejudice to appellant after the jury had the opportunity to view a television show, and (3) in overruling appellant's objection to the pros-

ecutor's comments regarding the presumption of innocence and an endorsement of personal belief by the prosecutor.

The sufficiency of the evidence is not challenged so a brief summary thereof suffices. The evidence is sufficient to support the jury's finding of conviction. At about 6:00 p.m. on January 2, 1981, Arline Braxton, the victim, was awaiting the arrival of a city bus to complete her journey home. She was hailed by appellant and another male from appellant's motor vehicle. The victim was acquainted with appellant and accepted appellant's offer to drive her to her home. The victim testified she had never dated the appellant and she did not know appellant's male companion. The victim testified appellant told her he had to pick up something at his house and the three then proceeded to appellant's house. The three went into the house with the victim intending to use the bathroom. The victim asked appellant to take her home and he agreed, "Well, I will take you home after we have a little fun". The victim stated she wanted nothing to do with it and started to leave, but appellant grabbed her arm and appellant and his companion took her upstairs to a bedroom. The two undressed the victim forcibly and put a pillow over her face. While appellant had sexual intercourse with the victim, his companion held her down. She was continuously struggling against the two. Appellant and the companion switched places. While the companion was having sex with her, appellant tried to get the victim to have oral sex with him. She refused and appellant became angry. The companion tried also to have the victim have oral sex. The victim then scratched the two on the testicles. The two cursed the victim, struck and kicked her. The victim tried to escape through a window, but she was caught by appellant. Appellant was checking the window which had been broken and the victim continued to fight with the companion all the way downstairs. The two then pulled her back upstairs and the companion had sex with her again. Appellant then took $20.00 in cash and some valium tablets from the victim. He told her she owed him for the broken window. The demand for the window repair caused the victim, from fear, to offer to write appellant a check at her home. The three then proceeded to the victim's residence, where, in the privacy of a bedroom, but in appellant's presence, the victim wrote out a check to appellant's favor for $150.00.

The medical evidence revealed proof of intercourse, along with multiple bruises and abrasions.

The defense was consent. On the matter of the victim's injuries, appellant testified the victim became enraged because he had climaxed in the victim's mouth after his promise not to do so. Appellant testified the victim became angry and was kicking at him, that she fell against the window and also damaged his color television. It was appellant's testimony that the victim tendered payment of $150.00 as repairs for the window and television voluntarily.

The evidence closed. The jury returned its verdict, after trial motions were filed, and after the ruling thereon, this appeal followed.

Under point (1), appellant charges the trial court erred in its refusal to grant appellant's motion for mistrial because of improper comment by the prosecutor during opening statement. The contention was that the prosecutor's statement was an improper comment upon appellant's silence. The challenged statement is as follows:

"Officer MacDougall then questioned him [appellant] about whether or not his testicles had been scratched or cut. He first denied it. Following that, they examined his testicles, took a picture of it which showed a cut on the testicle. He again questioned him about that and the defendant said, 'Maybe it got there when Arline Braxton became mad'. He did not make a signed statement."

then the following occurred:

"I object. May we approach the bench, Your Honor?"

During a conference at the bench, appellant, through counsel, stated:

"At this time, I think Mr. Stigall has stretched his argument to the point where he is commenting on the defendant's refusal to sign a statement which is in direct violation of the defendant's Miranda rights...."

The prosecution then argued to the court that the remark was that the appellant did not make a signed statement and not that appellant refused to make a statement. The record was read back and the above statement verified for the trial judge. Appellant's request for a mistrial was denied. Upon appellant's request, the jury was admonished thusly.

"The objection is sustained. Ladies and Gentlemen of the jury you will disregard the prosecutor's comment regarding the defendant's alleged failure to sign a statement. You should totally disregard that statement. The statement will be stricken from the record."

■ Appellant argues that the foregoing statement was a comment upon his right to remain silent, thus violating his constitutional rights under the Fifth Amendment to the United States Constitution and Article I § 19 of the Missouri Constitution. He further charges the trial court admonishment to the jury was insufficient citing *State v. Stuart*, 456 S.W.2d 19 (Mo.banc 1970); *State v. Phelps*, 384 S.W.2d 616 (Mo.1964); *State v. Benfield*, 522 S.W.2d 830 (Mo.App. 1975); and *State v. Halk*, 524 S.W.2d 44 (Mo.App.1975). In addition, appellant points out that the alleged prejudicial comment was made in the opening statement and that is as harmful as if made during closing argument, citing *State v. Roth*, 549 S.W.2d 652 (Mo.App.1977). Appellant argues that the instant case should be distinguished from *State v. Leonard*, 606 S.W.2d 403, 408 (Mo.App.1980) because, unlike *Leonard*, supra, the comment herein was directed to draw the jury's attention to whether appellant elected to remain silent. This court disagrees.

■ The court in *Leonard* declared: "[t]he ultimate test of whether the privilege was denied or the right violated is whether the challenged remarks were reasonably apt to have directed the jury's attention to the fact that the defendant refused to speak on his behalf [citations omitted]."

■ When the challenged comment is carefully studied, it is apparent that the comment did not allege nor infer that appellant refused to talk with the officer or to sign a statement. In *United States v. Sanders*, 547 F.2d 1037, 1042 (8th Cir.1976) cert. denied 431 U.S. 956, 97 S.Ct. 2679, 53 L.Ed.2d 273, it was held:

"In testing the remarks, we look to see whether the comment was clearly intended or was of such a nature that the jury would naturally and necessarily view the comment as a reference to the defendant's failure to testify [citations omitted]. A second point of inquiry is whether the statements were prejudicial to the defendant."

The challenged comment herein did not ".... highlight defendant's failure to offer an exculpatory version of the incident at the time of his arrest", *Leonard* supra.

In addition, as to the question of silence, it has been recently ruled that, where an accused has made statements to authorities subsequent to arrest, he has not remained silent. *State v. Harper* 637 S.W.2d 342 (1982), *United States v. Muscarella*, 585 F.2d 242, 248 (7th Cir.1978).

This court in *Harper*, supra, declared:

".... the law is clear that when a defendant exercises his constitutional right to remain silent, his post arrest silence is not admissible against him [citations omitted], this rationale has no application where the defendant elects to waive that right during his custodial arrest and proceeds to make statements as was done here, [citations omitted]. This is true whether the statements waiving the right are made before or after the expressed desire to remain silent."

It is concluded that *Stuart, Phelps, Benfield, Halk,* and *Roth,* supra, do not control, but rather this point is disposed of by *Leonard, Sanders, Harper,* and *Muscarella,* supra. The trial court did not err in overruling appellant's motion for a mistrial. There

is no showing of prejudice against appellant regarding his right to due process or a fair trial.

Point (1) is found to be without merit and is ruled against appellant.

Under his point (2), appellant presents a rather novel contention by charging the trial court with error by an abuse of its discretion when the trial court denied appellant "the opportunity to show or discover the *likely* prejudice to the appellant after an *unsequestered* jury had the opportunity to view a highly inflammatory and biased television program which was factually similar to the allegations of the instant case" [emphasis added].

The first day of this trial ended and, as the jury was unsequestered, they were permitted to leave the courthouse. On the morning of the second day of the trial, the appellant requested permission to voir dire the jury concerning what appellant concluded was a *highly inflammatory television program* aired in the local area the night before. It was and still is appellant's contention that the television program was prejudiced, biased, and so similar to the instant case that he should have been entitled to voir dire jury members to determine if "it had a prejudiced effect upon them". Appellant's request was denied and he then moved for a mistrial which was overruled.

■ Appellant concedes that the decision by the trial court upon such matters lies within the discretion of the trial court and that as the defendant he has the burden of proving in what manner publicity influenced jury deliberation to his prejudice. *State v. Moore,* 499 S.W.2d 826 (Mo.App. 1973); *State v. Grimm,* 461 S.W.2d 746 (Mo. 1971); *State v. Crider,* 451 S.W.2d 825 (Mo. 1970).

Appellant attempts to buttress his argument with authority wherein pretrial, trial, and post-trial publicity was at issue. This authority is misplaced as regards the instant case. The trial court, in ruling the appellant's motion, stated:

"The court feels that a [poll of jurors] would simply focus attention on issues

that may or may not have affected the jury. We have no way of knowing the particular slant he referred to. I have no idea, not seeing the program, how it would have affected those who had viewed the same but it appears to me that it might have been to the defendant's advantage based upon what I have heard . . . "

The foregoing judgment exercised by the trial judge, is both sound and finds support in case authority. In *United States v. Hankish,* 502 F.2d 71, 77 (4th Cir.1974), it was declared that, " . . . . unless there is substantial reason to fear prejudice, the trial judge may decline to question the jurors."

■ There is nothing upon this record which reveals *a substantial reason to have feared prejudice against appellant.* What this argument is premised upon is the presumed conclusions of appellant that the program was prejudiced and biased against him, that any of the jurors who viewed the program and those who "might" have viewed it formed a prejudice against him. The argument is structured upon nothing more than a network of conjecture and speculation.

The trial court did not abuse its discretion. There is no merit to point (2) and it is ruled against appellant.

Under his final point (3), appellant charges the trial court erred in overruling his objection to improper comment by the prosecutor regarding his presumption of innocence "which resulted in a contradiction of MAI CR2 2.20 and an endorsement by the prosecutor of his own personal belief".

The challenged comment by the prosecutor reads as follows:

"Mr. Knight [appellant's counsel] argued that the defendant or the State must prove, that's what the defendant said, I didn't do it, prove it. He puts the cloak of innocence around him and says he's presumed to be innocent as he sits here. But folk's, that cloak went away with the testimony of Arline Braxton and I submit he does not sit here as an innocent man."

It is the phrase, "I submit he does not sit here as an innocent man" which appellant lifts from final argument and charges the court erred when it failed to sustain his objection to that phrase.

It is appellant's contention that this phrase had a twofold impact. It is first asserted that it "strayed far from MAI–CR2 2 20" and in so doing, the prosecutor overthrew the presumption of innocence, citing *State v. Young,* 99 Mo. 666, 12 S.W. 879, (Mo.1890). *Young,* supra, was a trial for homicide wherein the comment by the state was, "the defendant is a mean-low down wicked dirty devil" and further, "when we proved that defendant admitted the killing, the presumption of innocence was overthrown". Appellant's reliance upon *Young* is obviously misplaced.

■ In reality, appellant attempts to persuade this court that this single phrase was a misstatement of the law to the extent that the jury was led to believe appellant had the duty to prove his innocence and not that the prosecution had the duty to prove his guilt. This court cannot glean from the whole of the closing argument, including the challenged phrase, any such conclusion.

■ It is the burden of appellant to show how such statement prejudiced his right to due process and a fair trial. Prejudice must be shown to support a reversal of conviction. *United States v. Parr-Pla,* 549 F.2d 660, 662 (9th Cir.1977), cert. denied 431 U.S. 972, 97 S.Ct. 2935, 53 L.Ed.2d 1069.

The challenged statement, particularly when viewed in the light of the entire closing argument, did not instruct the jury upon the law. The record reveals that the court, under its instruction, properly advised the jury of appellant's presumed innocence until, and upon deliberation, the jury made any finding of guilt. There is no merit to appellant's contention that this phrase, "strayed far from MAI–CR2 2 20" and in so doing, there was an overthrow of the presumption of innocence. There is no prejudice shown to have been suffered by appellant and appellant has failed in his burden to prove any prejudice.

■ Appellant argues further that the term, "I submit" was an endorsement of his remarks as his own and the result was the *infusion* of the personal belief of the prosecutor. Appellant's argument stretches common sense to its limits. In the first instance, the statement itself is not inherently a personal endorsement of one's own remarks. It is equally plausible to view such expressions as merely introductory or as drawing attention to a point to be made; such point being that there is nothing within the phrase itself which forces the conclusion that the term is a personal endorsement of the point to be offered. This being the situation, the phrase must be considered in a different manner and weighed in light of the latitude granted counsel within the discretion of the trial judge. The precise question has been recently considered and this court concludes that the rule announced in *United States v. Segal,* 649 F.2d 599, 604 (8th Cir.1981) disposes of this question. In *Segal,* supra, the court declared:

> "Here, the government attorney's comment can be fairly read as an expression of 'personal belief in the guilt of the accused . . . . based on the evidence adduced at trial . . . . [which did not lead the jury] to believe that the opinion [was] based on evidence not included in the record.' "

The record herein reveals no "overthrowing" the presumption of innocence and no personal endorsement beyond permitted limits. *Segal,* supra. There was no error by the trial court in overruling appellant's objection.

As a passing note, this precise question is actually a broadening of appellant's objection at trial and is reviewable only as plain error. This court has *ex gratia* reviewed the same and finds no error plain or otherwise.

There is no merit to appellant's final point (3) and it is ruled against him.

Judgment affirmed.

All concur.