STATE of Missouri, Respondent,

v.

Raymond Lee WEICHT, Appellant.

and

Raymond Lee WEICHT, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 16877, 17781.

Missouri Court of Appeals,
Southern District,
Division One.

June 25, 1992.

Motion for Rehearing or Transfer
Denied July 15, 1992.

Application to Transfer Denied
Sept. 22, 1992.

Judith C. LaRose, Columbia, for appellant.

William L. Webster, Atty. Gen., Rudolph R. Rhodes, IV, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Judge.

Raymond L. Weicht (defendant) was convicted following a jury trial of sodomy, a class B felony. §§ 566.060.3 and .4, RSMo 1986. He was sentenced to imprisonment for a term of five years. He thereafter filed a Rule 29.15 motion. Counsel was appointed and an amended motion filed. After an evidentiary hearing, the motion court entered findings of fact and conclusions of law and denied the motion. Defendant appeals from the judgment of conviction in the criminal case (No. 16877) and from the order denying the Rule 29.15 motion (No. 17781). The appeals were consolidated as required by Rule 29.15(1). This court reverses the judgment of conviction in case No. 16877 and remands that case for new trial.

The victim of the crime of which defendant was charged and convicted, V.L., was defendant's child. V.L. was four years old. Defendant lived with the child's mother, W.L., "[o]ff and on" over a period of "six and a half years approximately." W.L. had three other children. Three of her children, including V.L., lived with her. Defendant was not related to any of W.L.'s children other than V.L. At the time of the events upon which defendant's criminal conviction was based, defendant was not living with W.L.

Defendant was staying at a motel. He called W.L. to arrange an overnight visit with his daughter. He told W.L. that he was planning to leave town. W.L. agreed to the visit. She took V.L. to the motel and left her with defendant.

Defendant called W.L.'s residence several times that evening. W.L. did not answer the phone. She had her fifteen-year old

daughter answer. W.L. instructed the daughter to tell defendant that she was not there. W.L. said that she had her daughter answer because "he kept bugging me." Early the following morning, about 4:00 a.m., W.L. talked to defendant on the telephone. They argued. W.L. then went to the motel to get V.L. Defendant and W.L. continued to argue while she was at the motel. About an hour and a half later, she left with V.L. Defendant carried the child, who was asleep, from the motel to W.L.'s car. W.L. noticed nothing unusual.

About six days later, W.L. was visiting at a friend's house. Two of her older children and V.L. remained in her car outside the friend's house. While the children were in the car, V.L. told the other two that her dad had made her touch his "pee-pee."[1] W.L. contacted the police. Defendant was later taken into custody.

Defendant was questioned while he was in custody by a detective with the Greene County Sheriff's Department, Robert Claypool. Prior to the commencement of trial, defendant requested the trial court to suppress anticipated testimony from Detective Claypool. Defendant contended that Detective Claypool would testify, unless the court ordered otherwise, that defendant, "when talked to, refused to discuss the case with him." Defendant asserted that such testimony "would be in violation of [his] right to remain silent under the Fifth Amendment and the Fourteenth Amendment." He argued that the jury should not be told that he refused to talk about the case. The trial judge reserved his ruling on defendant's pretrial motion "until such time as the detective is in fact called." He instructed the attorneys to remind him then; that he would then entertain an offer of proof in order to "more intelligently rule on th[e] motion." Detective Claypool was

called as a witness. The trial judge heard testimony outside the presence of the jury. He then denied defendant's motion.

The trial continued. Detective Claypool testified before the jury. He was asked the following questions and gave the following answers over the objection of defendant:

Q. (By [asst. prosecuting attorney]) Now, did in fact Mr. Weicht proceed to speak with you?

A. Yes.

Q. Did you ask him about the charge of sexual contact or sodomy with [V.L.]?

A. Yes.

. . . . .

Q. Did Mr. Weicht ever deny having sexual contact with [V.L.]?

A. No.

The prosecutor also commented on defendant's failure to make an exculpatory statement in closing argument.

Defendant's first point on appeal is directed to the testimony of Detective Claypool. It contends that the trial court erred in denying the motion that sought to suppress part of Detective Claypool's testimony and in overruling the objection that defendant made to that testimony. Defendant claims that the trial court's denial of his pretrial motion and its overruling of his objection at trial violated his right to remain silent.

The state argues, quoting from *State v. Frentzel*, 717 S.W.2d 862, 866 (Mo.App. 1986), that "if an accused answers questions or makes statements after he has been taken in custody and has been advised of his *Miranda*[2] rights, he has elected not to remain silent and has waived his right to do so." *Frentzel* cites *State v. Gilreath*, 643 S.W.2d 274, 277 (Mo.App.1982), and

---

1. V.L. testified at trial. Her testimony was different from the statements that others said she made about what happened at the motel. She testified at trial that her daddy touched her "pee-pee." She was asked if she touched any part of him. She answered, "No." She was asked, "Did he ask you to touch him any place?" She answered, "No."

2. Detective Claypool testified that he read the Miranda warning to defendant and that defendant signed a written "rights waiver" that was admitted in evidence. That exhibit was not filed with this court or otherwise made a part of the record on appeal. However, defendant does not contend by his appeal that he was not advised of his right to remain silent nor does he assert that he was not given an appropriate Miranda warning.

*State v. Harper,* 637 S.W.2d 342, 345 (Mo. App.1982), for this proposition. The state infers, premised on the language of *Frentzel,* that since defendant had given some responses to questions asked by the detective, the state's comments on defendant's lack of responses to other questions—questions that directly accused him of the acts that were the basis of the criminal charge—were proper. The state contends that it was proper to elicit testimony about defendant's failure to make pretrial exculpatory statements after he was taken into custody. The state's reliance on *Frentzel,* in that regard, is misplaced.

*Frentzel* and the cases upon which it relied must be read in the context of the facts in those cases. The holding in *Frentzel* and the holdings in the cases it cited were explained in *State v. Crow,* 728 S.W.2d 229, 231 (Mo.App.1987):

> In *Frentzel* the defendant responded to police questions about several items in his automobile but refused to speak about some tools that were also in his car, and the prosecutor commented on this refusal during his opening statement. 717 S.W.2d at 866. The defendant objected and asked for a mistrial, the objection was sustained but the mistrial was denied.... In *Gilreath* the prosecutor in his opening statement told the jury the defendant at first denied the existence of an injury and only when the police took a picture of it did he give an explanation, but he still refused to make a written statement. The court sustained an objection to the opening statement but refused to grant a mistrial. This ruling was upheld on appeal because defendant did not demonstrate any prejudice and the prosecutor's remarks did not highlight the lack of an early exculpatory statement. 643 S.W.2d at 276–278. In ... *Harper,* where there was unsolicited trial testimony from the police that "they did not want to talk to us," defendant's objection to the officer's testimony was sustained, and defendant made pre-trial exculpatory statements about his purpose for being at the site of a burglary and the ownership of stolen money, the Western District affirmed the

denial of defendant's motion for a mistrial. 637 S.W.2d at 345.

In *Crow* the court pointed out that "the prosecutor made numerous, pointed references to the lack of a pre-trial exculpatory statement, defendant's specific objections were all overruled, and most importantly defendant's statements consisted only of booking information and an indefinite expression referring, if to anything, to his possible conviction, not to the specifics of the alleged criminal act." 728 S.W.2d at 231. The court held that any statements that were made by the defendant in that case were too vague to be a waiver of the right to remain silent and permit the state to comment on that defendant's having not made an exculpatory statement.

In this case, as in *Crow,* defendant made limited statements. Those statements made no reference to any specifics of the alleged criminal act. The prosecutor elicited, over the objection of defendant that was overruled, pointed testimony from Detective Claypool about the lack of any pretrial exculpatory statement. The facts in this case are not akin to those in *Frentzel* nor to those in *Gilreath* nor to those in *Harper.* The facts here are similar to the facts in *State v. Crow.*

In *Crow* the court addressed the principle that the state cannot comment on a criminal defendant's exercise of his or her right to remain silent. It explained, at 1.c. 230, the effect that answers to questions by a defendant have on the right to remain silent:

> If, however, the defendant answers questions or makes a statement while in custody, the right to remain silent and not have the State comment on that silence is waived *as to the subject matter of those statements.* (Emphasis added.)

In this case, the state's inquiries about statements that defendant did make and statements that he did not make were not limited to the subject matter of the responses he had given. The detective who questioned defendant testified, "He was not responsive to my questions." The de-

tective was asked to be more specific. He explained:

I asked him if he had any type of sexual acts with [V.L.], and he said, "I have herpes." I asked him if ct any time if he had unzipped his trousers while he was laying on the bed, and he again replied, "I have herpes." And the next answer that he gave on the next question was, "I should not have stayed in Springfield, I should be gone." This was the answer to the next two or three questions that he replied to.

The next answer, when it was asked about an involvement with the little girl, he said, "If the little girl was asked this question and her mother was not present, she will answer truthfully." That was the three answers that he gave to all questions that was asked him.

Based upon that testimony, the state contends that defendant waived his right to remain silent and waived the right to not have the state comment on that silence. The prosecutor inquired whether the detective asked defendant "about the charge of sexual contact or sodomy with [V.L.]." After the detective answered, "Yes," she then asked, "Did Mr. Weicht ever deny having sexual contact with [V.L.]?"

The questions the prosecutor asked the detective were not limited to the subject matter of defendant's statements. Defendant's statements were directed to the disease he claimed to have and to V.L.'s veracity. He made no statement to the detective "about the charge of sexual contact or sodomy with [V.L.]."

The trial court's allowance of the testimony of Detective Claypool, over defendant's objection, regarding a lack of pretrial exculpatory statements by defendant was error. "To waive his right to not have the State comment on the exercise of his right to silence, a defendant must make a statement obviously related to something, and then the waiver is only as to the subject of that statement. *See Anderson v. Charles*, 447 U.S. [404] at 408, 100 S.Ct. [2180] at 2182 [65 L.Ed.2d 222 (1980)]." *State v. Crow, supra*, at 232. Defendant's first point is granted. It is determinative

of this appeal. The judgment of conviction is reversed, and the case is remanded for a new trial. The appeal in case No. 17781 is moot by reason of the foregoing. It is dismissed.

PREWITT, P.J., and CROW, J., concur.